844 A.2d 1239

**MCI WORLDCOM, INC., Appellant**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 21, 2002.

Decided March 22, 2004.

Jeffrey A. Rackow, Maureen Frances Del Duca, Carlisle, Thomas E. Groshens, Philadelphia, for Worldcom, Inc.

Kathryn Grace Sophy, Kimberly A. Hafner, Maryanne Reynolds Martin, David E. Screven, Bohdan R. Pankiw, Harrisburg, for PA Public Utility Com'n.

Zsuzsanna E. Benedek, for Sprint Communications Co.

Renardo Lee Hicks, Wyomissing, James Hughes Cawley, Harrisburg, for NEXTLINK Pennsylvania, Inc.

Regina Louise Matz, David Mark Thomas, Patricia Lee Armstrong, Harrisburg, for Alltel Pennsylvania, Inc.

Renee Levine Cohn, Harrisburg, for ATX Telecommunications Services, Ltd.

David Michael DeSalle, John Francis Povilaitis, Harrisburg, for Covad Communications Co.

James Hughes Cawley, Harrisburg, for Senator Roger A. Madigan, Mary Jo White.

Christopher B. Craig, Harrisburg, Richard A. Sprague, Philadelphia, for Senator Vincent J. Fumo.

Barrett C. Sheridan, Edward G. Lanza, Philip F. McClelland, Harrisburg, for Consumer Advocate.

Derrick Price Williamson, Pamela Catherine Polacek, Chris Mincavage Burak, Harrisburg, for PA Cable & Telecommunications Ass'n.

Robert Charles Barber, Daniel Clearfield, Alan Kohler, Harrisburg, for AT&T Communication of Pennsylvania, Inc.

Norman James Kennard, Harrisburg, for Commonwealth Telephone Co.

Melissa H. Maxman, Michael A. Adler, Michael M. Baylson, Philadelphia, for GTE North, Inc.

John David Filipowicz, Princeton, NJ, for RCN Telecom Services, Inc.

Angela T. Jones, Harrisburg, Bernard A. Ryan, for Small Business Advocate.

Joseph A. Dworetzsky, Philadelphia, for City of Philadelphia.

Claire M. Diemer, Stephen Wen-Wei Ching, Paul Steven Diamond, Thomas A. Leonard, Julia Ann Conover, Philadelphia, for Verizon Pennsylvania, Inc. (Bell Atlantic-PA, Inc.)

Before: ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

### *OPINION*

Justice CASTILLE.

This is an appeal from an *en banc* decision of the Commonwealth Court that affirmed the order of the Pennsylvania Public Utility Commission ("PUC") setting rates for access to Verizon Pennsylvania Inc.'s network for local telephone service. Appellant, MCI WorldCom, Inc. ("WorldCom"), presents issues regarding the propriety of the rates set by the PUC. Before we may reach those substantive issues, however, the threshold issue of whether federal courts have exclusive jurisdiction over such disputes must be addressed. As we find that jurisdiction over state commission decisions under the Telecommunications Act of 1996 lies exclusively in federal courts, we vacate the Commonwealth Court's decision for lack of jurisdiction.

The United States Congress enacted the Telecommunications Act of 1996 ("the 1996 Act") to end the "longstanding regime of state-sanctioned monopolies" that existed in the nation's local telephone service markets and to replace that regime with competitive markets. *See AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999). In creating the 1996 Act, Congress realized that it would require sweeping changes in the governing law and economic

structure of the long-standing local telecommunication market. Prior to the passage of the 1996 Act, the Communications Act of 1934 divided responsibility for regulating telecommunications into (1) federally-regulated long distance services and (2) state-regulated intrastate services. States generally granted incumbent local exchange carriers (ILEC's), such as Verizon, exclusive monopoly franchises to provide local services with an infrastructure that connects virtually every home and business in a local service area.

The effect of the 1996 Act was to implement a uniform national policy of market competition in local telephone services. The 1996 Act preempted all state laws and regulations that "prohibit, or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a). Recognizing that more intrusive federal regulation was necessary in order to make local telecommunication markets competitive, Congress authorized new entrants into the local telephone service market to make use of existing local networks in order to expedite competition.

Section 251 of the 1996 Act establishes three routes through which new telecommunication competitors can enter and compete in local markets: (1) by constructing new competing networks; (2) by reselling to consumers retail services that they have purchased from ILECs at wholesale prices and have repackaged under their own brand names; or (3) by obtaining nondiscriminatory access to ILEC network elements on an unbundled ("separately priced") basis. In order to achieve market efficiency, Congress required that the network element price rates be "just, reasonable and nondiscriminatory" and "based on the cost ... of providing" the element or interconnection. 47 U.S.C. § 251(c)(3); 47 U.S.C. § 252. Congress specifically prohibited the traditional rate-of-return approach to pricing. 47 U.S.C. § 252(d)(1).

Congress empowered new telecommunication entrants to request from ILECs interconnection, resale or access to unbundled network elements ("UNEs") and required incumbents to negotiate with new entrants over the particular terms of

such arrangements. Congress authorized state public utility commissions, such as the PUC, to adjudicate under federal law all disputed issues in a process termed "arbitration," the result of which is an "interconnection agreement" incorporating the final terms of the relationship between the subject ILEC and the new entrant. *See* 47 U.S.C. § 252(b)(1). Although it made state utility commissions responsible for the arbitration process, Congress also directed the Federal Communications Commission ("FCC") to establish regulations to implement the requirements of Section 251 so that uniform federal standards would be in place to guide the Section 252 negotiation and arbitration processes at the state level.

Pursuant to Congress' mandate, the FCC issued pricing regulations governing UNE rates. Section 51.503 of the FCC's regulations requires state utility commissions to set prices for UNEs "pursuant to forward-looking economic cost-based pricing methodology set forth in section 51.505." 47 C.F.R. § 51.503(b)(1). Section 51.505 describes the "Total element long-run incremental cost" methodology or "TELRIC." Therefore, under the FCC's regulations, the Pennsylvania PUC must set prices for network elements based on forward-looking costs as determined by a particular methodology: TELRIC.

On July 31, 1996, the PUC opened the docket known as the "MFS III"[1] proceeding to set permanent rates for the leasing of UNEs in Pennsylvania. The rates set in MFS III were to be incorporated into Verizon's interconnection agreements with WorldCom and other new entrants into Pennsylvania's local communications market. On April 10, 1997, the PUC issued an interim order indicating that it did not plan to base UNE rates strictly on cost, but instead intended to balance

1. Although not clearly explained by any party, "MFS III" appears to be a short-form reference to the origins of the proceeding below. The record reveals that MFS Intelenet of Pennsylvania, Inc. filed an application with the Pennsylvania PUC under the 1996 Act. R.R. 61a. The PUC apparently shortened the reference name of that proceeding to the "MFS" proceeding. The PUC proceeding which is the basis of the instant action was the third phase of the "MFS" proceeding and was thus dubbed the "MFS III" proceeding.

the cost-based mandate of the 1996 Act with the PUC's competing desire to ensure that Verizon earn profits in an amount sufficient to cover the expense of deploying new high frequency broadband technology across the Commonwealth. In order to achieve this goal, the PUC adopted Verizon's cost model, which did not employ the TELRIC methodology but which allowed Verizon to attempt to recoup its substantial capital investment in the proposed broadband technology network. On August 7, 1997, the PUC issued its Final Opinion and Order in which it reaffirmed, with one exception not relevant here, the findings set forth in the MFS III Interim Order. Two commissioners dissented.

The rates established in the MFS III proceeding were incorporated into WorldCom's interconnection agreement with Verizon. On December 8, 1997, WorldCom filed a complaint in the United States District Court for the Middle District of Pennsylvania, pursuant to Section 252 of the 1996 Act, for review of the parties' interconnection agreement. Verizon, AT&T and the PUC all participated as parties to the lawsuit. On September 16, 1999, the Magistrate Judge issued a Report and Recommendation in which he concluded that the UNE rates set in the MFS III proceeding, based as they were upon Verizon's non-TELRIC cost model, were inconsistent with the FCC's binding regulations and, therefore, were unlawful. In a memorandum opinion, the Honorable Sylvia H. Rambo of the Middle District adopted the Magistrate Judge's report with respect to the issue of UNE rates and remanded the matter to the PUC to reconsider its UNE pricing decisions in light of the FCC's binding pricing regulations. *See Bell Atl.–Pa., Inc. v. The Pennsylvania Pub. Util. Comm'n,* 273 F.3d 337 (3d Cir.2001).

In July 1998, the PUC initiated a comprehensive review of Verizon's UNE rates and terms for providing access to its network. In addition to the issue of UNE pricing, the PUC had before it several other unresolved issues concerning local telephone competition. The PUC attempted to resolve all of these matters through a global settlement conference. WorldCom participated in settlement proceedings conducted by the

PUC along with Verizon. On March 18, 1999, two sets of parties, one group including Verizon and the other including WorldCom, submitted competing joint settlement petitions to the PUC proposing resolutions of the issues in the petitions and in the stayed PUC dockets. Those petitions were offered as non-negotiable settlement propositions, intended to either be accepted or rejected in their entirety by the PUC. World-Com proposed in part, as did Verizon, to establish a compromise, non-TELRIC-based statewide average UNE loop rate of $14.01. The TELRIC-based average loop rate was asserted to be $10.09. WorldCom alleges that it made clear to the PUC that the $14.01 rate was acceptable to them only if the PUC adopted their petition in full.

By order dated April 2, 1999, the PUC terminated the global settlement conference and consolidated the two petitions for a contested hearing on the merits. After eight days of hearings, the PUC issued a 283–page Global Order, ruling on nearly all outstanding issues in the pending dockets. The PUC adopted the rates set forth in the parties' settlement petitions: $14.01. Several parties, including WorldCom, AT&T and Verizon, appealed the Global Order to the Commonwealth Court. Verizon simultaneously appealed the Global Order to the United States District Court for the Eastern District of Pennsylvania essentially raising the same arguments asserted before the Commonwealth Court.[2] In Verizon's federal action, WorldCom and AT&T filed cross-claims also challenging the Global Order. During the pendency of the federal action, the district court expressly denied the PUC's motion to abstain in favor of the Commonwealth Court's review of the Global Order. On October 25, 2000, the Commonwealth Court issued an *en banc* decision, affirming the Global Order with respect to all appeals before it. *Bell Atl.–Pa., Inc. v. Pennsylvania Pub. Util. Comm'n,* 763 A.2d 440 (Pa.Cmwlth.2000). On January 8, 2001, the Commonwealth Court denied reargument.

---

2. Verizon also sought simultaneous review in this Court via this Court's King's Bench powers. On June 2, 2000, this Court denied Verizon's King's Bench application.

This Court granted allocatur to determine if earlier decisions from the United States District Court for the Middle District of Pennsylvania or the United States Third Circuit Court of Appeals concerning the issue of the lawfulness of the cost model relied upon by the PUC to set UNE rates should be given preclusive effect. At oral argument on October 21, 2002, this Court directed the parties to provide supplemental briefing on the issue of whether the 1996 Act contemplates exclusive federal jurisdiction to review appeals arising under it, or whether concurrent state-federal subject matter jurisdiction exists over any such appeal. The parties have since complied. As a matter of comity and efficiency, this Court has tracked the pending federal action.

On December 12, 2003, the Honorable Marvin Katz of the United States District Court for the Eastern District of Pennsylvania denied the PUC's Motion for Summary Judgment in the federal appeal from the Global Order. Judge Katz found, *inter alia,* that (1) federal district courts have exclusive jurisdiction over appeals arising from determinations by state commissioners regarding interconnection agreements under the 1996 Act; and (2) Section 252(e)(4) is constitutional because Congress acted within the scope of its Commerce Clause power. The issues raised before the Eastern District are virtually identical to the arguments made before this Court. As a result, on December 16, 2003, the PUC promptly filed a Post–Submission Communication under Pa.R.A.P. 2501(b), submitting a copy of the opinion and order entered by Judge Katz. On December 19, 2003, WorldCom filed an Application to Present a Post–Argument Submission requesting leave to present this Court with the opinion and order entered by Judge Katz. Since Judge Katz' decision is obviously relevant to the issues currently before this Court, we accept the parties' post-argument submissions pursuant to Pa.R.A.P. 2501(b).

██ WorldCom argues that the Commonwealth Court lacked jurisdiction to review the UNE rates and, therefore, this Court must vacate the portion of the Commonwealth

Court order affirming the Global Order's UNE rates.[3] World-Com notes that Section 252(e)(4) of the 1996 Act unequivocally states that "[n]o *State Court* shall have jurisdiction to review the action of a State commission in approving or rejecting an agreement under this section." Brief of Appellant at 27 (citing 47 U.S.C. § 252(e)(4) (emphasis added)). WorldCom further notes that Section 252(e)(6) of the 1996 Act directs that in any case where a State commission makes a determination, an aggrieved party may bring an action in an appropriate federal District Court to determine if the agreement meets the requirements of Section 251. WorldCom argues that these sections when read together require that legal challenges to a state commission's approval of terms for interconnection agreements are exclusively within the jurisdiction of the federal courts. WorldCom finally notes that the United States Supreme Court has concluded that Section 252(e)(4) was expressly meant to exclude state court jurisdiction over appeals like this. *See* Reply Brief of Appellant at 1 (citing *Verizon Md., Inc. v. Public Serv. Comm'n of Md.,* 535 U.S. 635, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002)).

The PUC responds that Section 252(e)(4) of the 1996 Act only prohibits state court review in a narrowly tailored instance—in "approving or rejecting an agreement." *See* 47 U.S.C. § 252(e)(4). The PUC submits that, in the instant matter, the Global Order does not specifically approve or reject an agreement between an ILEC and a potential competitor. *See* Supplemental Brief of Appellee at 11 (citing *Bell Atl.–Pa., Inc. v. Pennsylvania Pub. Util. Comm'n,* 107 F.Supp.2d 653, 665 (E.D.Pa.2000)). Verizon, as intervenor, similarly argues that the Global Order was not an action "approving or rejecting an agreement" under Section 252(e)(4) and, therefore, Pennsylvania appellate courts are not divested of jurisdiction over this matter arising from the order of a Commonwealth agency.[4] The general order in the Global case

---

3. The question of jurisdiction is a pure question of law, as to which our review is plenary.

4. Verizon further argues that, when the Court is faced with a question of whether state court jurisdiction exists over a federal claim, there is a

did not specifically approve or reject an interconnection agreement, but merely required Verizon to change the rates it offered to all of its competitors, including WorldCom. Thus, the PUC concludes, jurisdiction over an appeal of the PUC's UNE rate decision in the Global Order properly lies in the Commonwealth Court under 42 Pa.C.S. § 763(a)(1).

Section 252 of the 1996 Act sets forth a process which oversees the establishment of interconnection agreements. First, an ILEC and a requesting carrier can enter into negotiations and a binding agreement. 47 U.S.C. § 252(a)(1). At any time during these negotiations, either party may ask the state utility commission to participate in the negotiations and mediate any differences arising during the negotiations. 47 U.S.C. § 252(a)(2). Additionally, the state commission may, by request of any of the parties, arbitrate any open issues. 47 U.S.C. § 252(b)(1). Once the parties have reached an agreement, either by negotiation or arbitration, the agreement must be submitted for approval to the state commission. 47 U.S.C. § 252(e)(1). The state commission must formally approve or reject the agreement, including written findings noting any deficiencies. *Id.* Review of the state commission's approval or rejection of the agreement is subject to exclusive federal jurisdiction. 47 U.S.C. § 252(e)(4) ("No State court shall have jurisdiction to review the action of a State commis-

presumption in favor of concurrent state court jurisdiction which can only be overcome by a specific directive or unmistakable implication from Congress that exclusive federal jurisdiction over an issue was intended. In Verizon's view, as Congress has not provided a specific directive or implication, and because Congress limited its exclusion of state court review to orders approving or rejecting interconnection agreements, there is concurrent jurisdiction in state and federal courts.

We find no merit in this argument. The presumption of concurrent jurisdiction can be rebutted in three ways: (1) by explicit statutory directive; (2) through an unmistakable implication from the statute's legislative history; or (3) by a clear incompatibility between federal and state-court jurisdiction. *See Bell Atl.–Pa., Inc. v. The Pennsylvania Pub. Util. Comm'n*, 295 F.Supp.2d 529, 536 (E.D.Pa.2003) (citing *Tafflin v. Levitt*, 493 U.S. 455, 459–60, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990)). As discussed below, we agree with Judge Katz that, reading Sections 252(e)(4) and 252(e)(6) together, it is apparent that "Congress made an explicit statutory directive divesting state courts of jurisdiction to review state commission determinations on interconnection agreements. Such authority is enjoyed exclusively by the federal courts." *Id.*

sion in approving or rejecting an agreement. . . . "). Additionally, "[i]n any case in which a State commission makes a determination under [Section 252], any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement . . . meets the requirements of section 251. . . ." 47 U.S.C. § 252(e)(6).

Thus, Congress explicitly eliminated state court jurisdiction over an appeal involving an approval or rejection of an interconnection agreement. What is not as explicit is the question of proper jurisdiction for review of other claims arising under the 1996 Act. The PUC and Verizon argue in favor of a narrow construction of Section 252, limiting federal court jurisdiction to claims under Section 252(e)(4) regarding approval or rejection of agreements. Numerous federal district and circuit court decisions, however, have ruled in line with WorldCom's argument and rejected such a parsimonious interpretation of Section 252(e)(6). Those decisions are grounded in the unavoidable fact that Section 252(e)(6) explicitly provides that, "[i]n any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court." Federal courts have declined to read this section narrowly. *Southwestern Bell Tel. Co. v. Public Util. Comm'n of Tex., et al.,* 208 F.3d 475 (5th Cir.2000) ("federal court jurisdiction extends to review of state commission rulings on complaints pertaining to interconnection agreements and that such jurisdiction is not restricted to mere approval or rejection of such agreements") (citing *Illinois Bell Tel. Co. v. Worldcom Tech., Inc.,* 179 F.3d 566, 571 (7th Cir.1999)); *see also BellSouth Telecomm., Inc. v. MCImetro Access Transmission Serv., Inc.,* 317 F.3d 1270, 1277–78 (11th Cir.2003) (finding that state commission interpretations of contracts are subject to federal review in district courts); *MCI Telecomm. Corp. v. Illinois Bell Tel. Co.,* 222 F.3d 323, 337–38 (7th Cir.2000) (declining to read Section 252(e)(6) narrowly); *Southwestern Bell Tel. Co. v. Brooks Fiber Communications of Okla., Inc.,* 235 F.3d 493, 497 (10th Cir.2000) (finding that limiting federal

court jurisdiction to matters involving state commission's approval or rejection of interconnection agreement "would lead to results Congress could not have intended").

In light of this authority, we are satisfied that federal courts have jurisdiction over appeals from state utility commission determinations involving interconnection agreements which arise under Section 252(e)(6), irrespective of whether they involve approval or rejection on appeal. *Sub judice*, in issuing the Global Order, the PUC ruled on the outstanding claims on the docket and established the UNE rate. As noted above, the FCC, per Congressional mandate, issued pricing regulations governing UNE rates. *See* 47 C.F.R. § 51.503(b)(1). Additionally, Section 252(d) provides that state commissions must determine just and reasonable rates for network elements. *See* 47 U.S.C. § 252(d). Accordingly, the PUC's ruling regarding the UNE rates plainly constitutes a determination regarding an interconnection agreement under Section 252(e)(6) and, as such, it is subject to federal court jurisdiction.

Finding that the federal district court has jurisdiction to review the instant appeal, we now turn to the issue of whether that jurisdiction is exclusive. The PUC argues that exclusive federal court jurisdiction is limited because Section 252(e)(6) merely states that an aggrieved party "may" bring an action in an appropriate federal district court, but it does not state that federal district courts have exclusive jurisdiction in all cases where a state commission makes a determination. The PUC thus concludes that there is no unmistakably clear pre-emption of Pennsylvania laws providing for Commonwealth Court review of final PUC orders. The PUC further notes that, if an ambiguity exists as to pre-emption, no pre-emption should be found. Accordingly, the PUC argues that this Court should hold that the Commonwealth Court had concurrent jurisdiction over its order.

Adoption of the PUC's concurrent jurisdiction argument would place this Court squarely at odds with the prevailing weight of federal authority. In *MCI Telecomm. Corp. v. Bell*

*Atl.–Pa.*, 271 F.3d 491 (3d Cir.2001), the Third Circuit found that Sections 252(e)(4) and 252(e)(6) should be read together and that, when so read, it is clear that "[f]ederal jurisdiction for the review of commission decisions on interconnection agreements is **exclusive.**" *Id.* at 512 (emphasis added). This conclusion has been reached by other federal courts as well. *See, e.g., MCI Telecomm. Corp. v. Illinios Bell Tel. Co.*, 222 F.3d at 337–38 (reading Section 252(e)(4) in conjunction with Section 252(e)(6) and finding that "Congress envisioned suits reviewing 'actions' by state commissions, as opposed to suits reviewing only the agreements themselves, and that Congress intended that such suits be brought exclusively in federal court."); *Southwestern Bell Tel. Co. v. Public Util. Comm'n of Tex.*, 208 F.3d at 481 ("federal court jurisdiction extends to review of state commission rulings on complaints pertaining to interconnection agreements and that such jurisdiction is not restricted to mere approval or rejection of such agreements"); *Illinois Bell Tel. Co. v. Worldcom Techs., Inc.*, 179 F.3d 566, 570–71 (7th Cir.1999) ("subsection 252(e)(4), when read in conjunction with subsection 252(e)(6), shows that Congress contemplated suits against state defendants in federal court"); *see also, e.g., Bell Atl.–Pa., Inc. v. The Pennsylvania Pub. Util. Comm'n*, 295 F.Supp.2d at 537–38 (collecting cases).

■ Federal Circuit Court decisions, of course, do not bind this Court. Nevertheless our review of the statutory construction rationale articulated by the federal courts that have reviewed this issue and reached the conclusion of exclusivity convinces us that the prevailing federal view is persuasive. Accordingly, we find that Sections 252(e)(4) and 252(e)(6) are indeed meant to be read together and, as a result, it is clear that jurisdiction over matters involving appeals from state commission decisions on interconnection agreements lies exclusively in federal courts. As the matter *sub judice* involves such a decision, the Commonwealth Court lacked jurisdiction to review this matter.[5]

---

5. It is undisputed that the substantive issue argued before this Court—the propriety of the UNE rates as established in the Global Order—is grounded exclusively in federal law. *See, e.g.,* Brief of Appellee at 6–7

The PUC alternatively argues that the prohibition of state court review under Sections 252(e)(4) and 252(e)(6) is unconstitutional. The PUC notes that the 1996 Act was passed pursuant to Congress's Commerce Clause powers and, while Commerce Clause powers are broad, they do not include the power to abrogate a state's sovereignty. The PUC claims that Section 252(e)(4) is unconstitutional because its prohibition of state court review is neither necessary nor proper. The PUC avers that it is not necessary to prohibit state court review to achieve the overarching congressional goal of developing competitive local telephone markets. Additionally, the PUC notes that, under the Tenth Amendment, "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. The PUC argues that Section 252 is not proper because it interferes with a state's sovereignty by eliminating state supervisory powers over a state administrative agency and replacing it with federal review. The PUC thus concludes that Congress exceeded its constitutional authority in enacting Section 252(e)(4) to the extent that the 1996 Act interferes with the States' sovereignty to review state administrative agency actions.

WorldCom counters that the PUC cannot contest Congress' power to enact the substantive local competition provisions of the 1996 Act because the local telephone networks substantially affect interstate commerce and regulation of the networks thus falls within Congress' Commerce Clause powers. WorldCom further argues that when Congress acts under its Commerce Clause powers, it has the authority to do all that is "necessary and proper" for carrying out that power, including preempting inconsistent state laws. *See, e.g.,* U.S. Const. art. I, § 8, cl. 18. Thus, WorldCom concludes that because Con-

("state commissions, including the PUC, are required to follow federal requirements when they establish UNE rates. Federal requirements are set forth in regulations promulgated by the [FCC] consistent with [the 1996 Act]."). As the issues before this Court are firmly and exclusively grounded in federal law, we do not address whether this Court, or any Pennsylvania state court, has subject-matter jurisdiction over potential claims arising from interconnection agreements that are grounded in state law.

gress possesses the power to preempt state law, Section 252(e)(4)'s preemption of state judicial review in certain instances is within Congress' constitutional reach under the Commerce Clause. WorldCom asserts that since Congress is validly legislating in a field within the purview of its Commerce Clause powers, it is authorized to divest state courts of concurrent jurisdiction.

Even if we were to assume that the PUC's constitutional objection had merit, that would not vest jurisdiction where the 1996 Act prohibits it. The proper forum for this constitutional argument, thus, is in the federal court. Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause. *Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (quoting *Ex parte McCardle*, 7 Wall. 506, 74 U.S. 506, 514, 19 L.Ed. 264 (1868)). The "canon of constitutional avoidance" provides that when a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter. *See Harris v. United States*, 536 U.S. 545, 555, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (quoting *United States ex rel. Attorney General v. Delaware Hudson Co.*, 213 U.S. 366, 408, 29 S.Ct. 527, 53 L.Ed. 836 (1909)). Pennsylvania explicitly recognizes this canon by statute in instances where construction of a Pennsylvania statute is at issue. *See* 1 Pa.C.S.1922; *see also Commonwealth v. Bavusa*, 574 Pa. 620, 832 A.2d 1042, 1050–51 (2003).

There is no merit in the claim that the statute is unconstitutional if review is exclusively federal. Congress' commerce power "extends to those activities intrastate which so affect interstate commerce, or the exertion of the power of Congress over it, as to make regulation of them appropriate means to the attainment of a legitimate end, the effective execution of the granted power to regulate interstate com-

merce." *Hodel v. Virginia Surface Mining and Reclamation Assoc., Inc., et. al.,* 452 U.S. 264, 281, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981) (quoting *United States v. Wrightwood Dairy Co.,* 315 U.S. 110, 119, 62 S.Ct. 523, 86 L.Ed. 726 (1942)). Additionally, it is well-settled that "the commerce power permits Congress to preempt the States entirely in the regulation of private utilities." *Federal Energy Regulatory Comm'n v. Mississippi,* 456 U.S. 742, 764, 102 S.Ct. 2126, 72 L.Ed.2d 532 (1982); *see also Bell Atl.–Pa., Inc. v. The Pennsylvania Pub. Util. Comm'n,* 295 F.Supp.2d at 539. Thus, it is clear that regulation of local telephone markets, as a public utility, was clearly within Congress' exercise of its Commerce Clause powers. *See MCI Telecomm. Corp. v. Bell Atl.–Pa.,* 271 F.3d at 503.

The Commerce Clause power is, however, guided by the Federal Constitution's Necessary and Proper Clause, which authorizes Congress "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers...." U.S. Const., Art. I, § 8, cl. 18; *see also New York v. United States, et. al.,* 505 U.S. 144, 158–59, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992). Legislation enacted under the Commerce Clause can only be invalidated if "it is clear that there is no rational basis for a congressional finding that the regulated activity affects interstate commerce, or that there is no reasonable connection between the regulatory means selected and the asserted ends." *Federal Energy Regulatory Comm'n,* 456 U.S. at 754, 102 S.Ct. 2126 (quoting *Hodel v. Indiana,* 452 U.S. 314, 323–24, 101 S.Ct. 2376, 69 L.Ed.2d 40 (1981)). The notion that the necessary and proper clause requires that a Congressional act be "absolutely necessary" has been rejected; the necessary and proper clause is satisfied as long as a statute is "conducive to the due administration of justice" in federal court, and is "plainly adapted" to achieve that end. *Bell Atl.–Pa., Inc. v. The Pennsylvania Pub. Util. Comm'n,* 295 F.Supp.2d at 539–40 (quoting *McCulloch v. Maryland,* 4 Wheat. 316, 17 U.S. 316, 4 L.Ed. 579 (1819)). Under this settled precedent, the PUC's argument that Sec-

tion 252's exclusion of state court review is not necessary or proper is not persuasive.

As noted above, the purpose of the 1996 Act was to eliminate the state-regulated monopolies of local telecommunication markets in favor of a regulatory scheme that encourages a competition-based market. This new scheme involved both state and federal participants, whose actions are to be governed uniformly by standards established by federal law. Congress' implementation of exclusive federal jurisdiction to review state regulatory decisions involving interconnection agreements is plainly adopted to carrying out these goals. *See Bell Atl.–Pa., Inc. v. The Pennsylvania Pub. Util. Comm'n,* 295 F.Supp.2d at 540. The prohibition of state court review in favor of exclusive federal review is reasonably connected to Congress' goal of uniformity concerning the newly-stated policy of competition in local telecommunication markets.

Additionally, the PUC's argument that Section 252 is not proper because it interferes with the Tenth Amendment's protection of state sovereignty is also without merit. The PUC claims that Congress cannot interfere with state sovereignty by prohibiting state court review over state commission actions.

The Tenth Amendment prohibits Congress from requiring states to administer federal programs against their will. *See Printz v. United States,* 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997); *see also U.S. West Communications, Inc. v. MFS Intelenet, Inc., et. al,* 35 F.Supp.2d 1221, 1232 (D.Or.1998). The Tenth Amendment, however, does not prohibit Congress from offering states the choice of either "regulating [an] activity according to federal standards or having state law pre-empted by federal legislation." *New York v. United States,* 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120, (1992) (citing *Hodel v. Virginia Surface Mining & Reclamation Assn., Inc.* 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981)); *see also Verizon Md., Inc. v. RCN Telecom Servs., Inc.,* 232 F.Supp.2d 539, 558 (D.Md.2002). Congress, there-

fore, may enact legislation that requires the state to either regulate in a certain area or opt not to participate, thereby allowing the federal government to preempt in that area. Federal regulation does not commandeer a state's legislative power or violate the Tenth Amendment as long as the state is given a choice regarding whether or not to enforce the regulation. *See Hodel,* 452 U.S. at 288, 101 S.Ct. 2352.

 Pennsylvania, via the PUC, had a choice regarding whether or not to enforce the 1996 Act or in the alternative opt out and allow complete federal preemption. Section 252 provides the states with the alternative to either: (1) carry out their responsibilities under the 1996 Act by mediating, arbitrating, approving, or rejecting interconnection agreements in accord with federal standards; or (2) cede authority to assume such responsibilities to the FCC. 47 U.S.C. § 252(e)(5); *see also Verizon Md., Inc.,* 232 F.Supp.2d. at 558. Thus, states have the option not to participate in the federal scheme. Any action on the part of the state or the state commission is therefore voluntary for Tenth Amendment purposes; the federal government is not compelling the states to act. Because participation in the 1996 Act is voluntary, federal regulation, including exclusive federal jurisdiction in reviewing state commission actions, does not infringe on the state's sovereignty in violation of the Tenth Amendment. *See MCI Telecom. Corp. v. Bell Atl.–Pa.,* 271 F.3d 491, 510 (3d Cir.2001) ("Because Congress validly terminated the states' role in regulating local telephone competition and, having done so, then permitted the states to resume a role in that process, the resumption of that role by a state is a congressionally bestowed gratuity. The state commission's authority to regulate comes from § 252(b) and (e), not from its own sovereign authority.").

In conclusion, this Court holds that jurisdiction to review state commission actions under the 1996 Act lies exclusively in federal courts. *See* 47 U.S.C. § 252. Congress had authority under the Commerce Clause to enact Section 252 and prohibit state court review of interconnection agreements. Furthermore, such action by Congress does not exceed its authority under the Commerce Clause, nor the Tenth Amendment. As

a result, the Commonwealth Court's order affirming the PUC's order setting rates for access to the local telephone network is hereby vacated.

Former Chief Justice ZAPPALA did not participate in the decision of this case.