J-S10037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| WHITELAND DENTAL ASSOCIATES, LLC AND DR. MICHAEL FRIEDLANDER, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| DR. MERSAD HOORFAR AND WHITELAND MANAGEMENT, LLC, | |
| Appellants | No. 2199 EDA 2015 |

Appeal from the Order July 10, 2015
in the Court of Common Pleas of Chester County
Civil Division at No.: 2015-04751-TT

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED FEBRUARY 18, 2016**

Appellants, Dr. Mersad Hoorfar and Whiteland Management, LLC, appeal from the order granting a temporary restraining order and a preliminary injunction in favor of Appellees, Whiteland Dental Associates, LLC and Dr. Michael Friedlander.[1] Appellees sought a declaratory judgment of their rights after threatened with eviction from their professional offices for rent unpaid while Appellant Dr. Hoorfar was in charge of paying the practice's bills (before Dr. Friedlander bought out the practice). Pending

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Although dated July 9, 2015, the order appealed from was not filed and docketed until the next day, July 10, 2015. We have amended the caption accordingly.

resolution of the issues pertinent to the underlying claims, the trial court, after a hearing, enjoined Appellants from eviction proceedings and other self-help remedies. We conclude under our standard of review that the trial court had "apparently reasonable grounds" to support its grant of the preliminary injunction request. Accordingly, we affirm.

We derive the facts of this case from the trial court's opinion of September 11, 2015, and our independent review of the record:

Dr. Mersad Hoorfar was the sole owner and shareholder of Whiteland Dental Associates, LLC (Whiteland Dental) from its inception until 2007. On or about February 5, 2007 Dr. Hoorfar sold 49% of the practice to Dr. Michael Friedlander. Dr. Hoorfar maintained the position of manager of the practice, including paying the bills of the practice.

Whiteland Management, LLC (Whiteland Management), solely owned by Dr. Hoorfar, was created in late 2006 or early 2007 for the purchase of the building located at 670 West Lincoln Highway, Exton, PA where Whiteland Dental is located. Whiteland Dental continues to rent the building from Whiteland Management.

On or about August 25, 2014, Dr. Hoorfar sold his 51% share of Whiteland Dental to Dr. Friedlander for $525,000. Dr. Hoorfar continued to manage Whiteland Management after he sold his portion of the practice. Since Dr. Friedlander purchased the practice, all rent has been paid in full and in a timely manner. Whiteland Dental pays Whiteland Management approximately $8,000 per month rent. Whiteland Dental currently employs eleven full and part-time employees.

On or about June 17, 2015 Dr. Friedlander received a letter from counsel for Whiteland Management stating that he was in default under the lease for failing to pay $141,385 in rent and if Whiteland Dental failed to make payment in full within 10 days, Whiteland Management would commence eviction proceedings. Dr. Hoorfar testified that in 2008, 2009 and 2010, finances were

tight and Whiteland Dental was unable to make the rental payments to Whiteland Management. Therefore, as the Landlord, Dr. Hoorfar gave Whiteland Dental a break on the rent with the knowledge that it would be repaid in the future. Dr. Hoorfar testified that he kept Dr. Friedlander informed of the amount that was owed. Dr. Hoorfar testified that Dr. Friedlander acknowledged the amounts due in ongoing conversations with him before the sale of the practice. Dr. Hoorfar does not remember when these conversations took place.

In an email sent from Dr. Friedlander to Dr. Hoorfar dated August 17, 2014, just days prior to the sale of the business, Dr. Friedlander asked Dr. Hoorfar how much back rent was left to be paid. Dr. Hoorfar answered $10,700. Dr. Hoorfar testified that he told Dr. Friedlander, during progressive conversations before the sale of the practice, this was rent owed for 2013 only.

In a text from Dr. Hoorfar to Dr. Friedlander just prior to closing of the sale of the practice, Dr. Hoorfar informed Dr. Friedlander that there was no outstanding debt in the practice other than the victory loan that is almost paid off. (Exhibit P-4). Dr. Hoorfar testified that this referred to "practice debt" only. Dr. Hoorfar could not tell who sent the text in Exhibit P-4.

Dr. Friedlander does not recall a conversation with Dr. Hoorfar whereby Dr. Hoorfar told him the back rent owed in the amount of $10,700 was for 2013 only. The Purchase Agreement dated July 15, 2014 and signed by both parties does not list $141,385 in back rent as being due and owing. Prior to purchasing Dr. Hoorfar's share of the practice, Dr. Friedlander had little access to the books and did not write any checks to pay the expenses of the practice. Dr. Friedlander believed Dr. Hoorfar was paying the rent in full each month. Dr. Friedlander was aware that the practice was having financial difficulties between 2007 and 2009. Dr. Friedlander never saw Exhibit D-1, enumerating the back rent due, prior to the date of the hearing.

(Trial Court Opinion, 9/11/15, at 2-4) (most record citations omitted).

[Appellees] initiated this action by Complaint on June 25, 2015 seeking a preliminary and permanent injunction as well as declaratory judgment, piercing the corporate veil and damages for breach of fiduciary duties, breach of contract, fraud, conversion, and violation of the Pennsylvania Unfair Trade

Practices and Consumer Protection Act. On that same date, [Appellees] filed a Petition for a Special Injunction in the Nature of a Temporary Restraining Order and Preliminary Injunction seeking to temporarily restrain [Appellants] from commencing eviction proceedings or disturbing [Appellees'] right to quiet enjoyment of the premises it leases from [Appellants] and reversing any self-help measures instituted by [Appellants] to that point.

By [o]rder dated June 25, 2015 [the trial court] entered a rule upon [Appellants] to show cause, if any, why an injunction should not be entered in favor of [Appellees]. A hearing on [Appellees'] petition was held on June 26, 2015. At the conclusion of the hearing, [the trial court] entered an Order on the record, granting a temporary restraining order and a preliminary injunction. This oral determination was entered as a written [o]rder on July 9, 2015. [Appellants] timely filed a Notice of Appeal.

(*Id.* at 1-2).[2]

Appellants present three questions for our review:

1. Did the [trial c]ourt lack jurisdiction as the jurisdiction of the [c]ourt in equity may not be invoked since there was an adequate remedy at law, *citing* **Peitzman v. Seidman**, 427 A.2d 196 (Pa[.] Super. 1995)?

2. Did the [trial c]ourt err in granting a [p]reliminary [i]njunction to [Appellees] as [Appellees] failed to establish a likelihood of success on the merits and/or irreparable harm?

3. Did the [trial c]ourt err in enjoining Appellants from commencing eviction proceedings against Whiteland Dental Associates, LLC?

(Appellants' Brief, at 3).

_____

[2] Appellants timely filed a court-ordered statement of errors on July 30, 2015. **See** Pa.R.A.P. 1925(b). As already noted, the trial court filed an opinion on September 11, 2015. **See** Pa.R.A.P. 1925(a).

We note our well-settled standard of review for a challenge to jurisdiction:

> Issues pertaining to jurisdiction are pure questions of law, and an appellate court's scope of review is plenary. ***MCI WorldCom, Inc. v. Pennsylvania Public Utility Com'n***, 577 Pa. 294, 844 A.2d 1239 (2004). Questions of law are subject to a *de novo* standard of review. ***Kripp v. Kripp***, 578 Pa. 82, 849 A.2d 1159 (2004).

***Robert Half Int'l, Inc. v. Marlton Techs., Inc.***, 902 A.2d 519, 524 (Pa. Super. 2006).

Our standard of review for the grant or denial of a preliminary injunction is also well-settled:

> [I]n general, appellate courts review a trial court order refusing or granting a preliminary injunction for an abuse of discretion. We have explained that this standard of review is to be applied within the realm of preliminary injunctions as follows:
>
>> [W]e recognize that on an appeal from the grant or denial of a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were **any apparently reasonable grounds** for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [trial court].
>
> This Court set out the reasons for this highly deferential standard of review almost a hundred years ago:
>
>> It is somewhat embarrassing to an appellate court to discuss the reasons for or against a preliminary decree, because generally in such an issue we are not in full possession of the case either as to the law or testimony— hence our almost invariable rule is to simply affirm the decree, or if we reverse it to give only a brief outline of our reasons, reserving further discussion until appeal, should

there be one, from final judgment or decree in law or equity.

**Thus, in general, appellate inquiry is limited to a determination of whether an examination of the record reveals that "any apparently reasonable grounds" support the trial court's disposition of the preliminary injunction request.**

In ruling on a preliminary injunction request, a trial court has "**apparently reasonable grounds**" for its denial of relief where it properly finds that **any one** of the following "essential prerequisites" for a preliminary injunction is not satisfied. First, a party seeking a preliminary injunction must show that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages. Second, the party must show that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings. Third, the party must show that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct. Fourth, the party seeking an injunction must show that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits. Fifth, the party must show that the injunction it seeks is reasonably suited to abate the offending activity. Sixth and finally, the party seeking an injunction must show that a preliminary injunction will not adversely affect the public interest.

*Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1000-01 (Pa. 2003) (emphases added) (citations omitted); *accord, Overland Enter., Inc. v. Gladstone Partners, LP*, 950 A.2d 1015, 1019 (Pa. Super. 2008).

In their first question, Appellants challenge the jurisdiction of the trial court to enter a preliminary injunction. (*See* Appellants' Brief, at 3). They

- 6 -

argue that there exists an adequate remedy at law under The Landlord and Tenant Act of 1951, 68 P.S. §§ 250.101—250.602. (*See id.* at 8-9). In support they cite *Peitzman*, *supra*. We disagree.

Preliminarily, our independent review of Appellees' complaint confirms the trial court's finding that Appellees allege a multiplicity of causes of action which far exceed the specific confines of the Landlord and Tenant Act. Notably, *Peitzman* involved the single principal issue of the non-renewal of a lease.[3]

Here, while the focus of Appellees' contentions centers on Appellants' threat of eviction, that eviction is premised on the non-payment of rent. That non-payment of rent relates back to the time when Dr. Hoorfar was in charge of both companies, and their assets. The rent due is current since Dr. Friedlander purchased the practice. (*See* Trial Ct. Op., at 2). Furthermore, Appellees claimed that while Dr. Hoorfar was in exclusive

_____

[3] Specifically:

> The thrust of appellants' prayer for relief was that, in refusing to renew the apartment lease, appellees were acting in malicious retaliation for their active participation in and chairmanship of the Parkway House Tenant's [sic] Association, an organization designed to represent tenants in their dealing with the appellees as lessors.

*Peitzman*, *supra* at 197. In two other counts, appellants also sought to recover allegedly retaliatory rental overcharges, and damages for emotional distress. *See id.*

control of both LLC's, and their finances, he used LLC funds to pay purely personal obligations. The trial court identified claims of fraud, self-dealing, material non-disclosure of outstanding debt, breach of fiduciary duty, and conversion, as well as issues of piercing the corporate veil, and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Act. (*See* Trial Ct. Op., at 1-2; *see also* Complaint, 6/25/15, at 12-30).

We conclude that the trial court correctly determined that the Landlord and Tenant Act does not provide an adequate remedy for all the claims raised in this case. The trial court properly exercised its equitable jurisdiction. Appellants' first claim does not merit relief.

In their second question, Appellants challenge the trial court's grant of a preliminary injunction on the grounds that Appellees failed to establish a likelihood of success on the merits, or irreparable harm. (*See* Appellants' Brief, at 3). Appellants have waived this issue.

Appellants fail to develop an argument in support of either of these claims. (*See id.* at 7-15). Therefore, Appellants have failed to comply with Pennsylvania Rule of Appellate Procedure 2119(a):

> **(a) General rule.** The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a).

> "The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." ***Estate of Haiko v. McGinley***, 799 A.2d 155, 161 (Pa. Super. 2002); Pa.R.A.P. 2119(b). "Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." ***Lackner v. Glosser***, 892 A.2d 21, 29–30 (Pa. Super. 2006) (citations omitted). This Court will not act as counsel and will not develop arguments on behalf of an appellant. ***Irwin Union National Bank and Trust Company v. Famous and Famous and ATL Ventures***, 4 A.3d 1099, 1103 (Pa. Super. 2010) (citing ***Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007)). Moreover, we observe that the Commonwealth Court, our sister appellate court, has aptly noted that "[m]ere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of [a] matter." ***Boniella v. Commonwealth***, 958 A.2d 1069, 1073 n.8 (Pa. Cmwlth. 2008) (quoting ***Commonwealth v. Spontarelli***, 791 A.2d 1254, 1259 n. 11 (Pa. Cmwlth. 2002)).

***Coulter v. Ramsden***, 94 A.3d 1080, 1088-89 (Pa. Super. 2014), *appeal denied*, 110 A.3d 998 (Pa. 2014); *see also* ***Owens v. Mazzei***, 847 A.2d 700, 705-06 (Pa. Super. 2004) (declining to consider questions where brief did not provide corresponding analysis).

Here, instead, in conjunction with their first issue, jurisdiction, Appellants argue that Appellees failed to present evidence to pierce the corporate veil. (***See*** Appellants' Brief, at 10-14). They maintain that the trial court lacked jurisdiction because the purchase agreement related to the sale of the dental practice contained an arbitration provision. (***See id.*** at 10). Appellants concede that neither Whiteland Dental nor Whiteland

Management is a party to the purchase agreement. (*See id.*). Accordingly, Appellants' second issue is waived.

Moreover, it would not merit relief. The trial court found that Appellees established the risk of irreparable harm. (*See* Trial Ct. Op., at 9-10). Specifically, the court noted that eviction within ten days, as threatened by counsel for Appellants, would result in the loss of income (for an indeterminate period unless and until Appellee found suitable replacement space in a location accessible to the same patient base) for Appellee Dr. Friedlander as well as his eleven employees.

The court also noted that the immediate relocation, which eviction would require, "would be both impractical and impossible." (*Id.* at 9). Furthermore, Dr. Friedlander's patients would be denied the dental care they usually receive. (*See id.*).

We conclude that the trial court established "apparently reasonable grounds" for its determination. Therefore, under our well-settled standard of review, we would affirm. *See Summit Towne Ctr.*, *supra* at 1000-01. Appellants' second claim, even if not waived, would merit no relief.[4]

Appellants' third claim generally asserts trial court error for granting the temporary injunction. (*See* Appellants' Brief, at 3). It is also

_____

[4] Because the trial court's analysis established the risk of irreparable harm, we decline to address Appellants' alternate argument that Appellees failed to prove likelihood of prevailing on the merits.

unsupported by pertinent argument or citation to authority.  (*See id.* at 7-15).  Appellants' third claim is waived and would fail on the merits for the same reasons as the second claim.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/18/2016