888 A.2d 640

**Homer C. KNOX, III, Appellant**

v.

**BOARD OF SCHOOL DIRECTORS OF SUSQUENITA SCHOOL DISTRICT, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 1, 2004.

Decided Dec. 28, 2005.

Stephanie Jo Peel, Elliot A. Strokoff, Harrisburg, for Homer C. Knox, III.

Colleen Frances Nihill, Philadelphia, William W. Warren, Jr., Harrisburg, Attorney Karl Stewart Myers, Philadelphia, for Pennsylvania Association of School Business Officials.

Philip Haring Spare, Susquehanna, for Board of School Directors of Susquenita School District.

Before CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN, BAER, JJ.

## *OPINION*

Justice CASTILLE.

In this appeal, this Court examines whether the job removal protections outlined in Section 10–1089(c) of the Public School Code of 1949 (the "Code"), 24 P.S. § 1–101 *et seq.*,[1] which governs school "business administrators," apply where a business administrator, who worked without a written contract of employment for a number of years, is informed by the school

---

1. Act of March 10, 1949, P.L. 30, as amended.

district that his employment is being terminated at the end of the fiscal year. A divided panel of the Commonwealth Court held that Section 10–1089(c) had no application at all because it governs only written employment agreements and appellant in the case *sub judice* did not have such a written agreement. This Court disagrees with that broad holding and, for the reasons set forth below, we vacate the order below and remand the matter to the Commonwealth Court for proceedings consistent with this Opinion.

The parties stipulated to the following facts: On September 15, 1987, appellant became the business manager of the Susquenita School District in Perry County ("School District" or "District"), a position that the parties agreed falls within the Code's definition of "business administrator." On March 16, 1988, the District's Board of School Directors ("Board" or "appellee") formally notified appellant by letter that he had been elected to a three-year term of employment, commencing the prior September 15, and running to September 15, 1990. Appellant was advised to sign and return an attachment to the letter, but neither party was able to locate such a document and appellant could not recall if he had signed it. At the end of the original three-year term of employment, the Board took no further action to define the term of appellant's position, or the conditions of renewal, but appellant continued to serve as the District's business manager.

Some seven years later, on June 10, 1997, the Board passed a resolution stating that appellant's term of employment would expire on June 30, 1997, and that the Board would not extend or renew appellant's term of employment beyond that date. The resolution directed the School Superintendent to notify appellant of the decision and also announced that the Board would seek a new business manager. On June 11, 1997, Susquenita School Superintendent Mark T. Dietz sent a Memo to appellant advising him of the Board's determination "that your term of employment will expire as of June 30, 1997."

By counseled letter dated June 23, 1997, appellant attempted to appeal the Board's decision, requesting a hearing and a bill of particulars concerning the reasons for the Board's

determination. The Board refused to provide a hearing or a bill of particulars. In the meantime, on or about June 20, 1997, appellant applied to the Public School Employees Retirement System for a lump sum retirement payment. Thereafter, in May of 1998, the School District formally abolished the position of business manager; from July 1, 1997 until September of 2000, the duties of the business manager were performed by an outside consultant.

On July 9, 1997, appellant filed a petition for review of the School Board's job termination action in the Court of Common Pleas. Following a hearing on September 18, 2000, the trial court filed an order and memorandum opinion in which it concluded, *inter alia,* that appellant had a property interest in his job as business manager in light of Section 10–1089 of the Code. Section 10–1089, which is entitled simply, "Business Administrator," provides as follows:

(a) A governing board of a school entity may employ or continue to employ a person serving in the function of business administrator of the school entity who shall perform such duties as the governing board may determine, including, but not limited to, the business responsibilities specified in section 433 of this act.

(b) The governing board may enter into a written employment agreement with a person hired after the effective date of this section to serve as a business administrator or into an amended or renewed agreement with a person serving in that function as of such effective date. The agreement may define the period of employment, salary, benefits, other related matters of employment and provisions of renewal and termination of the agreement.

(c) Unless otherwise specified in an employment agreement, the governing board shall, after due notice, giving the reasons therefor, and after hearing if demanded, have the right at any time to remove a business administrator for incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth or other improper conduct.

(d) A person serving as business administrator shall not be a member of the governing board of the school entity.

(e) A person serving as business administrator may serve as secretary or treasurer of the governing board.

(f) For purposes of this section, the term "school entity" shall mean a school district, intermediate unit or an area vocational-technical school. The term "governing board" shall mean the board of directors or joint board of such entity.

24 P.S. § 10–1089. The trial court determined from the stipulated facts that appellant was a business administrator as defined in the statute, and that even though there was no written employment agreement in effect at the time of his termination, the due process protections governing "removal" which are set forth in Section 10–1089(c) were applicable. Accordingly, the trial court ordered that the Board, "schedule a hearing . . . and make a determination as to whether or not the business manager should be dismissed for cause."

Thereafter, the parties filed a joint request for reconsideration, asking that the court issue a final order, and suggesting four issues to be addressed in that final order: (1) whether appellant had a term of employment which expired on June 30, 1997; (2) whether appellant had a property interest in continued employment under Section 10–1089; (3) whether appellant's retirement barred his claim; and (4) whether the Board's subsequent determination on May 8, 1998 to abolish the business manager position barred any remedy to appellant for periods after that date. On December 11, 2001, the trial court issued a final order in which it concluded that: appellant's term of employment did not expire on June 30, 1997; appellant had a property interest in continued employment by virtue of Section 10–1089; and appellant's retirement did not bar his claim because he had only applied for retirement because of the sudden termination of his job, and he needed the money. With respect to the fourth question, the trial court found that appellant's property interest in the business manager position ended when the District formally abolished it on May 4, 1998. Addressing the possible scope of damages,

the trial court noted that appellant was theoretically entitled to back pay from June 30, 1997 to either September 15, 1997 or September 15, 1999, depending upon whether his continuing appointment was deemed to extend for a one-year or a three-year term. Rather than resolve this employment duration issue, the court determined that a "fair resolution" was to deem appellant's entitlement to benefits to have expired as of May 4, 1998, when the business manager position was formally abolished.

The parties cross-appealed. Appellant challenged the trial court's conclusion that any remedy was limited to the period from June 30, 1997 through May 4, 1998, and the Board challenged whether, under Section 10–1089(c), appellant had a cognizable property interest in continued employment at all after June 30, 1997 and whether, in any event, his retirement barred his claim.

On appeal, a divided panel of the Commonwealth Court reversed in an unpublished decision. The panel majority framed the controlling issue as whether, under the statute, a school district business administrator who does not have a written employment agreement has a property right in continued employment. The majority rejected appellant's argument that the statute mandates that a business administrator without an employment contract may only be removed from the position for the specific causes stated in Section 10–1089(c). To the contrary, the majority found that the statute grants school boards the option of entering into employment agreements with business administrators, thereby creating a property right via written contract, but that no such property right exists in circumstances where the business administrator and the school board have not entered into a written employment agreement. Section 10–1089(c), the majority reasoned, only addresses the process required when a school board seeks to remove from office a business administrator who has a written employment agreement; but, if there is no written employment agreement, the administrator is an employee at-will who is subject to dismissal at any time and for any reason. The majority further reasoned that the General Assembly's failure

expressly to include business administrators without written employment agreements in Section 10–1089(c) indicates that it did not intend to establish an expectation of continued employment for such school employees. Because there was no evidence that the Board here chose to enter into a formal, written employment agreement with appellant beyond the first three years he was actually employed, the panel majority held that appellant was an at-will employee subject to summary dismissal. In light of its conclusion in this regard, the majority did not address the Board's alternate argument respecting the effect of appellant's retirement, nor did it address appellant's scope-of-remedy claim on his cross-appeal.

Judge Friedman dissented, opining that the plain language of Section 10–1089(c) compels a contrary conclusion. Because the General Assembly used the indefinite article "a" before the term "business administrator" in the statute, rather than employing a limiting descriptive phrase such as "a business administrator with a written employment agreement," the dissent concluded that the legislative intent was to afford every school business administrator the protections against removal set forth in Section 10–1089(c).

The dissent further analogized Section 10–1089(c) to Section 5–514 of the Public School Code, which sets forth removal protections identical to those in Section 10–1089(c) for the benefit of "officers, employes and appointees" of school districts:

The board of school directors in any school district, except as herein otherwise provided, shall after due notice, giving the reasons therefor, and after hearing if demanded, have the right at any time to remove any of its officers, employes, or appointees for incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth, or other improper conduct.

24 P.S. § 5–514. The dissent recognized that this Court had held that Section 5–514 was invalid to the extent that it conflicted with the Pennsylvania constitutional power summarily to remove appointed "officers" under Article VI, Section 7 of the Pennsylvania Constitution. *See Buell v. Union*

*Township School District*, 395 Pa. 567, 150 A.2d 852 (1959). The dissent also recognized that the Commonwealth Court itself had concluded in *Bedeski v. Greater Nanticoke Area School District*, 58 Pa.Cmwlth. 400, 427 A.2d 1269, 1271 (1981), that a school district business manager was such a public officer who could be summarily discharged under Article VI, Section 7.[2] However, the dissent viewed the General Assembly's 1989 adoption of Section 10–1089 governing school business administrators, including subsection (c) affording those administrators protections identical to those offered to other school employees by Section 5–514, as indicating an intention to extend those Section 5–514 protections to school business administrators, unless the administrator was employed pursuant to a written agreement specifying otherwise.

 This Court granted review limited to the issue of whether Section 10–1089(c) applies to a business administrator who was employed by a school district for a term of years without a written employment agreement and who is then terminated without cause. This issue of statutory construction presents a pure question of law; thus, our review is plenary. *MCI WorldCom, Inc. v. Pennsylvania Public Utility Comm'n*, 577 Pa. 294, 844 A.2d 1239 (2004); *Mosaica Academy Charter School v. Commonwealth, Department of Education*, 572 Pa. 191, 813 A.2d 813 (2002). The Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.*, provides that the object of interpretation and construction of all statutes is to ascertain and effectuate the intention of the General Assembly. *See* 1 Pa.C.S. §§ 1903(a), 1921(b). Generally speaking, the best indication of legislative intent is the plain language of the statute. *See, e.g., Commonwealth v. Gilmour Manufacturing Co.*, 573 Pa. 143, 822 A.2d 676, 679 (2003); *Bowser v. Blom*, 569 Pa. 609, 807 A.2d 830, 835 (2002) (citations omitted); *Pennsylvania Financial Responsibility Assigned Claims*

**2.** We note that there is no issue presented in this appeal concerning whether the restrictions upon removal contained in Section 10–1089(c) violate Article VI, Section 7 of the Pennsylvania Constitution, in light of *Bedeski* and *Buell*. *See* Commonwealth Ct. Dissenting Opinion by Friedman, J., slip. op. at 5 (noting that Board waived any claim regarding its constitutional power to remove).

*Plan v. English,* 541 Pa. 424, 664 A.2d 84, 87 (1995) ("Where the words of a statute are clear and free from ambiguity the legislative intent is to be gleaned from those very words."). A reviewing court should resort to other considerations to determine legislative intent only when the words of the statute are not explicit. 1 Pa.C.S. § 1921(b). *See Canvass of Absentee Ballots of November 4, 2003 General Election,* 577 Pa. 231, 843 A.2d 1223, 1230 (2004) *(citing O'Rourke v. Commonwealth, Dept. of Corrections,* 566 Pa. 161, 778 A.2d 1194, 1201 (2001)); *see also Ramich v. Workers' Compensation Appeal Bd. (Schatz Electric, Inc.),* 564 Pa.656, 770 A.2d 318, 322 (2001). When construing statutory language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage...." 1 Pa.C.S. § 1903. Finally, the Act advises that, "Statutes in pari materia shall be construed together, if possible, as one statute." 1 P.S. § 1932(b).[3]

Appellant argues that the unambiguous language of Section 10–1089(c) mandates that **any** school business administrator may be removed only for specified causes, with the logical exception that a business administrator subject to a written employment agreement may be removed from office in accordance with the provisions of his agreement, if such terms are provided. Thus, appellant, who did not have a current, written employment agreement with the Board, claims he was entitled to the default protections afforded by Section 10–1089(c), and his employment could be terminated only for the causes specified in that subsection. Appellant argues that because the Board unilaterally declared that his term of employment had expired, never afforded him a hearing, and never proffered any of the specific statutory grounds as supportive reasons for appellant's removal, then that removal was in violation of the statute. Appellant argues that the Commonwealth Court ignored the plain language of the stat-

**3.** "Statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things." 1 Pa.C.S. § 1932(a).

ute to pursue what it believed to be the spirit of the enactment, and thereby erred.

Appellant urges in the alternative that, even if the language of the statute were deemed to be ambiguous, and thus warranted judicial interpretation, its clear intent is to protect business administrators so that they can perform their fiscal watchdog duties without fear of summary or retaliatory dismissal. Appellant views the 1989 enactment of Section 10–1089 as a legislative response to the Commonwealth Court's 1981 decision in *Bedeski* designed to afford all school business administrators the same basic protections afforded to other employees under Section 5–514 of the Public School Code. As support for this construction, appellant notes that Sections 10–1089(d) (prohibiting school business administrators from serving as members of the school board) and (e) (permitting school business administrators to serve as secretary or treasurer of the school board), like (c), are not expressly limited to business administrators with written employment agreements, yet these provisions logically should apply to all business administrators, not just those with written employment agreements. Appellant contends that subsection (c) should also be deemed to apply to all school business administrators, irrespective of whether they are subject to a written employment agreement.

Appellant also notes that it is illogical, if not absurd, to conclude that the General Assembly intended only to address school business administrators who had written employment agreements because those are the employment relationships least in need of legislative oversight or qualification. This is so because a written employment agreement would likely set forth the terms and conditions of employment and the manner in which the contractual employment could be terminated. Thus, in such instances, there would be less need for the default removal protections provided by Section 10–1089(c) since the contract would control. Conversely, employment relationships where no written contract exists with the business administrator are more likely and logically in need of legislative attention. For all of these reasons, appellant requests that this Court reverse and remand to the Common-

wealth Court to address the scope of damages issue he raised, and which the panel did not address given its disposition.

In response, the Board does not directly dispute appellant's argument that Section 10–1089(c) applies to the removal of all business administrators, irrespective of whether they operate pursuant to a written contract. Instead, the Board urges that Section 10–1089(c) is of no avail to appellant because that provision governs the "removal" of business administrators and the Board did not "remove" appellant, it simply did not rehire him for another term of employment. Thus, the Board views the issue in this case not as a question of the "applicability" of the statutory removal provision, but as a question of whether appellant can be said to have been granted, via the statute, "a property interest in continued employment" such that the Board was obliged to "renew" his work arrangement. The Board notes that, as this Court held in *Pipkin v. Pennsylvania State Police*, 548 Pa. 1, 693 A.2d 190 (1997), a government employee only has a property right in his employment where he can establish a legitimate expectation of continued employment conferred either by agreement or by statute. In the case *sub judice,* the Board argues, appellant is attempting to convert the mere procedural mechanism set forth in Section 10–1089(c) for removing a business administrator from office into a grant of an expectation of continuing future employment. The statute, according to the Board, simply does not warrant such an interpretation. Where the General Assembly intends to create such tenure in an employee, the Board submits, it has explicitly done so. In this case, however, the General Assembly has not expressly created a property interest in future employment for school business administrators. Therefore, in the Board's view, such administrators are public officers whose continued employment depends entirely upon the will of the hiring party.

The Pennsylvania Association of School Business Officials ("Association") has filed a brief as amicus curiae in support of appellant. The Association echoes appellant's argument that both the plain language of Section 10–1089(c), and the perceived statutory purpose—to protect business administrators

from summary dismissal because such employees, as part of their job function, often make difficult and unpopular economic decisions—make clear that it is designed to apply to all school business administrators, and not just those with written employment contracts. These protections are especially necessary because, according to the Association, forty-seven (47%) percent of the school business administrators who responded to a 2001 Association survey were not protected by a written employment agreement. By the Association's calculation, under the Commonwealth Court's decision in this case, more than 200 school business administrators in Pennsylvania have now become subject to summary dismissal. Further, the Association asserts that the entire public school community, including school boards, superintendents and school district advisors, have historically viewed Section 10–1089(c) as applying to all school business administrators, including those working without written employment agreements.

 Pennsylvania has long subscribed to the at-will employment doctrine. Exceptions to the doctrine have generally been limited to instances where a statute or contract limits the power of an employer unilaterally to terminate the employment relationship:

> Generally, an employer "may discharge an employee with or without cause, at pleasure, unless restrained by some contract." *Henry v. Pittsburgh & Lake Erie Railroad Co.*, 139 Pa. 289, 297 21 A. 157 (1891). "Absent a statutory or contractual provision to the contrary, the law has taken for granted the power of either party to terminate an employment relationship for any or no reason." *Geary v. U.S. Steel Corporation*, 456 Pa. 171, 175, 319 A.2d 174, 176 (1974).

*Shick v. Shirey*, 552 Pa. 590, 716 A.2d 1231, 1233 (1998). *See also McLaughlin v. Gastrointestinal Specialists, Inc.*, 561 Pa. 307, 750 A.2d 283, 286 (2000). Further, "[t]his general rule is not abrogated just because the employee is a governmental worker since one does not have a *per se* right in governmental employment." *Pipkin v. Pennsylvania State Police*, 548 Pa. 1, 693 A.2d 190, 191 (1997) (citing *Commonwealth, Office of*

*Administration v. Orage,* 511 Pa. 528, 515 A.2d 852, 853 (1986)). Nearly a half century ago, in *Scott v. Philadelphia Parking Authority,* 402 Pa. 151, 166 A.2d 278 (1961), this Court outlined the parameters of tenure in public employment, as follows:

> Without more, an appointed public employee takes his job subject to the possibility of summary removal by the employing authority. He is essentially an employee-at-will. As we said in *Mitchell v. Chester Housing Authority,* [132 A.2d 873, 880 (1957)], with reference to a state agency employee but applicable in general, " * * * good administration requires that the personnel in charge of implementing the policies of an agency be responsible to, and responsive to those charged with the policy-making function, who in turn are responsible to a higher governmental authority, or to the public itself, whichever selected them. This chain of responsibility is the basic check on government possessed by the public at large." The power to dismiss summarily is the assurance of such responsibility.

> Tenure in public employment, in the sense of having a claim to employment which precludes dismissal on a summary basis, is, where it exists, a matter of legislative grace. It represents a policy determination that regardless of personality or political preference or similar intangibles, a particular job, to be efficiently fulfilled, requires constant and continuous service despite changes in political administration. In general, the legislature has conferred tenure as an integral part of a comprehensive governmental employment scheme such as those embodied in the Civil Service Act[] or the Teacher Tenure Acts[]. These legislative directives, and regulations promulgated thereunder, set forth in great detail the minimal requirements an employee must meet in order to secure initially governmental employment, the standards for advancement of such an employee, job classifications for remunerative purposes, and the requisites for discharge. Importantly, it is not until an employee has qualified under the systems that he is entitled to his tenure

rights. *See Templeton Appeal,* [399 Pa. 10, 159 A.2d 725 (1960)].

166 A.2d at 280–81 (footnotes omitted).

As the parties have noted, the General Assembly has adopted measures in the Public School Code that serve to limit the application of the at-will employment doctrine and to protect certain school employees from summary removal. First, Section 5–514 offered a measure of job protection to school "officers, employees, [and] appointees," setting forth the grounds for removal and the right to notice and a hearing. *See Coleman v. Board of Ed. of School Dist. of Philadelphia,* 477 Pa. 414, 383 A.2d 1275, 1280 (1978) ("Section 514 establishes rights in a School District employee not to be dismissed without specific cause and not to be dismissed without due notice and a statement of reasons, and it establishes corresponding duties in the School District"). In nearly identical language, and just as unambiguously, Section 10–1089(c) adopted protections for school business administrators during the terms of their employment: "(c) Unless otherwise specified in an employment agreement, the governing board shall, after due notice, giving the reasons therefor, and after hearing if demanded, have the right at any time to remove a business administrator for incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth or other improper conduct."

█ We agree with appellant and amicus that the plain language of the statute encompasses all school business administrators, and not just those subject to written employment agreements. By its terms, subsection (c) neither limits its application to written employment relationships, nor purports to exclude those administrators working without the benefit of a written contract. Additionally, the introductory caveat ("Unless otherwise specified in an employment agreement") itself is not limited to written agreements, nor does that caveat advert to the "written employment agreement" addressed in subsection (b)'s recognition of the authority of the governing board to enter into such written agreements: instead, subsection (c), at least, is open-ended. This construct

suggests that the protections offered in the provision were intended to be applicable so long as there is not some other agreement between the parties addressing the subject of the statute. Furthermore, we deem it significant that Section 10–1089(c), which is *in pari materia* with Section 5–514 of the Public School Code, indeed appears intended merely to extend to business administrators the very same protections that had long been afforded to those school employees governed by Section 5–514, and with the same lack of qualification.[4] Accordingly, we hold that the protections offered by Section 10–1089 apply equally to business administrators with or without written employment agreements, and that the Commonwealth Court panel majority erred in concluding otherwise.

Our holding that the Commonwealth Court erred in its broad determination that Section 10–1089(c) applies only to written employment agreements, however, does not entirely resolve this appeal. The Board is correct that this statute, again by its plain terms, is addressed only to the "removal" of school business administrators. The statute does not purport to confer any extra-contractual right to **continued** employment or tenure beyond what the parties may have agreed to— in writing, orally, or as a matter of history and experience. Thus, Section 10–1089(c) does not provide a school business administrator with employment for life absent misconduct falling into one of the enumerated statutory circumstances. As this Court noted in *Scott*, "where the legislature has intended that tenure should attach to public employment, it has been very explicit in so stating." *Scott*, 166 A.2d at 281. To read into Section 10–1089(c) any such explicit legislative grant of tenure in the position of school business administrator is to go beyond what the statute provides.

Rather, Section 10–1089(c) merely provides a business administrator with a certain degree of job security against removal during the term of his employment, whatever that

4. Because we have found that the plain language of the statute requires the conclusion that it applies to business administrators even in the absence of a written employment agreement, we need not engage in statutory construction.

term, as established by the agreement of the parties, might be. In this case, the Board appeared to concede below that appellant's employment was not entirely "at will," but that his expectations were tied into the school district's fiscal year and budgeting, *i.e.*, that his employment was subject to yearly renewal. Even in the absence of a written, contractually specified term of employment, appellant's long-term relationship with his employer no doubt provided some indicia of his expected term of employment.

The question of whether appellant in fact was "removed" during his contractual term of employment, such that Section 10–1089(c) is implicated, or whether that term ended on June 30, 1997, when he was not reappointed or rehired, was not specifically addressed by the Commonwealth Court panel, given its broader conclusion that the removal protections simply do not apply in the absence of a written agreement. It is also a question which was neither accepted for review, nor briefed before this Court. In these circumstances, the Court having answered the overarching question of statutory interpretation, the better course is to simply vacate the order below and remand the matter to the Commonwealth Court for further consideration in light of this Opinion.

Vacated and remanded.

Chief Justice CAPPY and MESSRS. Justice NIGRO, SAYLOR and BAER join the opinion.

Justice NEWMAN files a dissenting opinion.

Justice EAKIN files a dissenting opinion.

Justice NEWMAN, Dissenting.

The Majority holds that Section 1089 of the Public School Code of 1949 (Code), 24 P.S. § 10–1089, grants the due process protections enumerated in Section 1089(c) to all persons employed by school districts who function as a Business Administrator, regardless of whether they have an employment contract or not. Because I believe that this result is patently erroneous, I respectfully dissent.

We granted allowance of appeal to Homer C. Knox, III (Appellant) for the limited purpose of determining whether Section 1089 applies to a business administrator employed by a school district for ten years without a written employment agreement and subsequently either removed without cause or not renewed for a term of employment. In simple terms, we are to decide whether his termination by the School District is consonant with the provisions of Section 1089. While the trial court found, *inter alia*, that Appellant had a property interest in his position as Business Manager for the School District conferred upon him by Section 1089, a property interest that ended on May 4, 1998, when the School District abolished the position, the Commonwealth Court disagreed. It determined that Appellant had not acquired a property interest by virtue of his public employment concluding that:

The permissive nature of Section 1089, the failure to include the situation where a business administrator is not under an employment agreement, and the lack of a comprehensive employment and tenure scheme combined with the plain words of the statute lead this Court to conclude that the legislature did not intend to establish a legitimate expectation of continued employment absent an employment agreement.

(Slip Opinion at 7.)

Section 10–1089, which is entitled simply, "Business Administrator," provides as follows:

(a) A governing board of a school entity may employ or continue to employ a person serving in the function of business administrator of the school entity who shall perform such duties as the governing board may determine, including, but not limited to, the business responsibilities specified in section 433 of this act.

(b) The governing board may enter into a written employment agreement with a person hired after the effective date of this section to serve as a business administrator or into an amended or renewed agreement with a person serving in that function as of such effective date. The agreement may define the period of employment, salary, benefits, other

related matters of employment and provisions of renewal and termination of the agreement.

(c) Unless otherwise specified in an employment agreement, the governing board shall, after due notice, giving the reasons therefor, and after hearing if demanded, have the right at any time to remove a business administrator for incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth or other improper conduct.

(d) A person serving as business administrator shall not be a member of the governing board of the school entity.

(e) A person serving as business administrator may serve as secretary or treasurer of the governing board.

(f) For purposes of this section, the term "school entity" shall mean a school district, intermediate unit or an area vocational-technical school. The term "governing board" shall mean the board of directors or joint board of such entity.

24 P.S. § 10–1089. Until the enactment of Section 1089 in 1989, there was no statutory or constitutional provision permitting school districts to enter into contracts with business administrators. Individuals who functioned as business administrators uniformly came within the purview of Article VI, Section 7 of the Pennsylvania Constitution.[1] *See, e.g., Commonwealth v. Morrisey,* 86 Pa. 416 (1878) (school treasurer is a public officer of statutory creation); *Muir v. Madden,* 286 Pa. 233, 133 A. 226 (1926) (school treasurer is a public officer serving at the pleasure of the State); *Commonwealth ex rel. Logan v. Hiltner,* 307 Pa. 343, 161 A. 323 (1932) (borough treasurer is public officer); *Buell v. Union Twp. Sch. Dist.,* 395 Pa. 567, 150 A.2d 852 (1959) (secretary and treasurer of third class school district were appointed officers removable at the pleasure and discretion of board of school directors without cause). Like the analysis proffered by the Majority here, business administrators attempted to utilize the protections of

**1.** Constitutional Article VI, Section 7, provides in part that "[a]ppointed civil officers, other than judges of the courts of record, may be removed at the pleasure of the power by which they shall have been appointed."

Section 514 of the Code [2] to gain the right to be removed only for cause. However, this Court addressed the viability of this analogy and found it wanting in *Buell v. Union Twp. Sch. Dist.*, 395 Pa. 567, 150 A.2d 852 (1959), which I believe is controlling.

In *Buell*, our latest pronouncement on this issue, we determined that "[t]o the extent that [Section] 514 of the School Code of 1949 is in conflict with Article VI, [Section 7] of the Constitution, the former is invalid." *Id.* at 855. Significantly, *Buell*, was "elected" school district treasurer in June of 1957. In December of 1957, he was dismissed by the board without a hearing or stated cause. Buell sued the school district for wrongful discharge contending that Section 514 of the School Code provided the exclusive method for the removal of school district officers. The Court disagreed and held that a school district treasurer is removable at the pleasure of the appointive power and that the legislature *impermissibly circumvented this constitutional provision with the language contained in Section 514 when it made it applicable to school district treasurers.* *Id.* at 854.

Individuals functioning in the capacity of business administrator were, and still are, considered civil officers of the Commonwealth. Further, our Court has consistently held that a school district business manager, operating pursuant to whatever specific title is supplied by the individual district, is a "public officer" as distinguished from an "employee" and is subject to dismissal at the pleasure of the appointing authority. *See Buell v. Union Twp. Sch. Dist.*, 395 Pa. 567, 150 A.2d 852 (1959); *Commonwealth ex rel. Logan v. Hiltner*, 307 Pa. 343, 161 A. 323 (1932); *Muir v. Madden*, 286 Pa. 233, 133 A.

**2.** The basic text of Section 514 pre-existed the Code in a 1911 enactment (24 P.S. then § 342) and contained identical language to the current Section 514, which states:

The board of school directors in any school district, except as herein otherwise provided, shall after due notice, giving the reasons therefor, and after hearing if demanded, have the right at any time to remove any of its officers ... for incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth, or other improper conduct.
24 P.S. § 5–514.

226 (1926);[3] *Commonwealth v. Morrisey,* 86 Pa. 416 (1878). Although the Majority tries to dismiss as waived any discussion of constitutional limitations to Section 1089 (Slip Op. at 7 n. 2) from consideration, the application is inescapable. This Court has held that where the text of Section 514, which is virtually identical in relevant part to that of Section 1089, conflicts with Article VI, Section 7 of the Constitution, it is invalid. *Buell,* 150 A.2d at 855.

Article VI, Section 7 of the Pennsylvania Constitution of 1968, provides in part that "[a]ppointed civil officers, other than judges of the courts of record, may be removed at the pleasure of the power by which they shall have been appointed." Further, we have held that "[a]ll persons who, by authority at law, are entrusted with the receipt of public moneys, through whose hands money due to the public or belonging to it passes on its way to the public treasury, must be considered public officers, by whatever name or title they may be designated in the law authorizing their appointment and whether the service be special or general, transient or permanent." *Commonwealth v. Evans,* 74 Pa. 124, 139 (Pa. 1873).

When enacting Section 1089, the General Assembly is presumed to know the state of the law as set forth in the Pennsylvania Constitution and the decisions of this Court. It knew that the language it drafted would violate a constitutional provision and the decisions of this Court if it made business administrators anything other than civil officers subject to removal at the pleasure of the appointing power. However, in order to provide some employment protections for these individuals without conflicting with the Constitution, it authorized school boards to enter into employment contracts that may

---

**3.** In *Muir,* this Court addressed a 1911 enactment, which provided a method for the removal of school district officers pursuant to Section 514 of the Public School Code of 1949 identical in language to the present Section 514 of the School Code. The problem presented was the removability of a school board treasurer without cause. This Court affirmed *per curiam* a ruling of the trial court that a school district treasurer is a civil officer removable at the pleasure of the board of school directors.

vary the terms of employment by agreement. Recognizing that the existence of an employment contract conferred a property right in employment, the General Assembly ensured that due process protections were afforded to those who possessed employment contracts, but whose contracts did not contain the requirements for termination. The Board's letter of March 16, 1988, notifying Appellant that he had been "elected" to a three-year term of employment without specifying grounds for termination is a perfect example of the type of agreement that Section 1089(c) was meant to cover. If the Board had chosen to terminate Appellant's employment after July 8, 1989 but prior to September 15, 1990, Section 1089(c) would have required a hearing and dismissal for cause.

In *Commonwealth v. Sulzner*, 198 Pa. 502, 48 A. 476 (1901) this Court was faced with the precise issue that we address here. Mr. Sulzner was chosen by a Pittsburgh school board as treasurer and was without a contract. The board changed its collective mind and subsequently selected a Mr. Ripple for the position. Mr. Sulzner refused to deliver the funds and property of the school district to Mr. Ripple on the basis that he could not be removed from office except for cause. This Court concluded that, pursuant to Article VI, Section 4 of the Pennsylvania Constitution of 1874[4] (now Article VI, Section 7 of the Pennsylvania Constitution of 1968), Mr. Sulzner could be removed from office at the will of the appointing power. *Sulzner*, 198 Pa. 502, 48 A. 476.

4. Article VI, Section 4 of the Pennsylvania Constitution of 1874 stated:
All officers shall hold their offices on the condition that they behave themselves while in office, and shall be removed on conviction of misbehavior in office or of any infamous crime. Appointed civil officers, other than judges of the courts of record and the Superintendent of Public Instruction, may be removed at the pleasure of the power by which they shall have been appointed. All officers elected by the people, except Governor, Lieutenant Governor, members of the General Assembly, and judges of the courts of record learned in the law, shall be removed by the Governor for reasonable cause, after due notice and full hearing, on the address of two-thirds of the Senate.
The Pennsylvania Constitution of 1776 permitted officers of deeds and probate to be dismissed at the will of the appointing authority, while all others were subject to impeachment for cause. Pa. Const. of 1776, Section 34.

I recognize that there is no constitutional challenge to the provisions of Section 1089 of the Code, although business administrators are still unquestionably public officers, serving at the pleasure of the appointing authority. In my view, Section 1089 presumes two classes of business administrators—those with contracts and those without contracts. Those without contracts need not be addressed by Section 1089 because they are covered by Article VI, Section 7. The class of business administrators with contracts falls into two subsets—those whose contracts have termination provisions and those who do not have termination provisions. Section 1089 ensures that business administrators with contracts have the benefit of the due process protections that the property interest existing consonant with the contract affords.

Enactment of Section 1089 enabled school districts to attract better candidates by offering contracts for their employment. Those contracts could enumerate the terms of employment within the terms of the agreement and thereby supply a property interest in continued employment. However, Section 1089 must be read in conjunction with Article VI, Section 7 of the Pennsylvania Constitution of 1968 and the corresponding decisions of this Court. Within that context, Section 1089(c) can only govern those business administrators who have employment agreements with their respective school districts. Were we to broaden that section, as the Majority does, to include all business administrators, we are in conflict with Article VI, Section 7 of the Pennsylvania Constitution and previous holdings of this Court. Thus, where the agreement contains termination provisions, those provisions govern. Where the agreement does not contain termination provisions, then Section 1089(c) governs. If there is no such agreement, I agree with the Commonwealth Court that the individual is an employee at will. I would affirm the Commonwealth Court in its holding that Section 1089 is inapplicable to the instant matter due to the lack of an employment agreement.

I believe that the instant matter fails to distinguish itself from *Buell, Muir, Sulzner, Logan, Morrisey,* and *Evans.* Although these cases predate the enactment of Section 1089,

they reflect the existing law in Pennsylvania and are consonant with our Constitution. Appellant is without a contract, unable to establish a property right in his appointed employment, and may serve only at the pleasure of the Board, which expired on June 30, 1997.

Justice EAKIN, Dissenting.

I respectfully disagree with the majority's determination that § 10–1089(c) of the Public School Code of 1949, 24 P.S. § 1–101 *et seq.*, gives appellant "job removal protections" that preclude his dismissal.

"[A]s a general rule, Pennsylvania law holds that 'employees are at-will, absent a contract, and may be terminated at any time, for any reason or for no reason.'" *Pipkin v. Pennsylvania State Police,* 548 Pa. 1, 693 A.2d 190, 191 (1997) (quoting *Stumpp v. Stroudsburg Municipal Authority,* 540 Pa. 391, 658 A.2d 333, 335 (1995)). "A governmental employee only has a personal or property right in his employment where he can establish a legitimate expectation of continued employment through either a contract or a statute." *Id.,* at 192 (citation omitted). Clearly there was no written contract involved at the time of dismissal. The question here is whether this Code gives appellant a legitimate expectation of continued employment.

I am in agreement with the majority of the Commonwealth Court, which stated:

Construing the statute to give effect to all of its provisions, we find that the statute grants school boards the option of entering into employment agreements with business administrators and thus creating a property right. It does not create a property right for business administrators who do not have an employment agreement. . . .

\* \* \*

The permissive nature of Section 1089, the failure to include the situation where a business administrator is not under an employment agreement, and the lack of a comprehensive

employment and tenure scheme combined with the plain words of the statute lead this Court to conclude that the legislature did not intend to establish a legitimate expectation of continued employment absent an employment agreement.

*Board of School Directors of Susquenita School District v. Knox,* Nos. 70 and 83 CD 2002, unpublished memorandum at 6–7, 809 A.2d 1096 (Pa.Cmwlth. filed Oct. 7, 2002).

Indeed, the Code section at issue speaks to the ability of a Board to employ, set duties, enter and renew written employment contracts, and to remove business administrators. It does not confer rights on the person the Board hires. It gives the Board the right to remove "at any time" rather than at the end of a specific term of employment, but if such "any time" removal is sought, the procedure and reasons are limited to those set forth. This does not say that only these most fundamental reasons—incompetence, intemperance, neglect of duty, violation of the law—will permit removal. It does not give the non-contract employee "job removal protections" or any "right" to continue employment no matter the desire of the Board to make a change.

This section, dealing with the authority of the Board, does not give appellant any rights or expectations, nor in my judgment does it change his status as an at-will employee. Hence, my respectful dissent from the result reached by my colleagues.