**Mark A. LUKACS, Appellant**

v.

**PLUM BOROUGH SCHOOL DISTRICT, Dawn Caruso, Kevin Dowdell, Linda Eazor, Dan Lioy, Jeffrey Matthews, Tom McCough, Paul Olijar, Kris Traficanti and Loretta White.**

Commonwealth Court of Pennsylvania.

Argued May 6, 2008.

Decided July 16, 2008.

Bernard P. Matthews, Jr., Greensburg, for appellant.

Lee V. Price, Pittsburgh, for appellee, Plum Borough School District.

. BEFORE: McGINLEY, Judge, SMITH–RIBNER, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Mark A. Lukacs (Lukacs) appeals from the September 27, 2007 order of the Court of Common Pleas of Allegheny County (trial court) dismissing Lukacs "Motion for the Court to Hear and Consider Additional Evidence on Appeal under Local Agency Law" and "Petition for Review and Appeal under Local Agency Law."[1]  We affirm.

Lukacs was employed by the Plum Borough School District (District) as its Director of Business Affairs beginning in April 2000.  No written employment contract existed between Lukacs and the District.  After an informal hearing before the assistant superintendent, Lillian Nacarrati, Lukacs was administratively suspended on October 5, 2006, without pay.  At that time, Lukacs was served with a "Statement of Charges and Notice of Opportunity for Formal Hearing" pursuant to Section 1089 of the Public School Code of 1949.[2]  Therein, Lukacs was charged by the District's Administration with immo-

---

1.  By order of April 24, 2008, this Court ordered that this appeal be listed for argument seriately with a related appeal involving the same parties which is docketed in this Court at 1846 C.D. 2007.

2.  Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 10–1089.  Section 1089 governs the position of business administrator and provides as follows:

    (a) A governing board of a school entity may employ or continue to employ a person serving in the function of business administrator of the school entity who shall perform such duties as the governing board may determine, including, but not limited to, the business responsibilities specified in section 433 of this act.

    (b) The governing board may enter into a written employment agreement with a person hired after the effective date of this section to serve as a business administrator or into an amended or renewed agreement with a person serving in that function as of

rality, incompetency, neglect of duty, violation of school laws and other improper conduct. The Statement of Charges outlined four different areas of alleged improper conduct: (1) charges relating to the 2006–07 budget; (2) charges relating to late federal tax deposits; (3) overpayment of teachers for sick leave bank days; and (4) charges relating to overpayment of health insurance premiums. Lukacs was also notified that he had a right to a formal hearing before the Plum Borough School Board (School Board). Lukacs requested a public hearing and hearings were held by the School Board on January 20, 2007, February 19, 2007 and February 26, 2007. During the hearings, witnesses presented testimony and exhibits were received into evidence.

Based on the evidence presented, the School Board found there was sufficient evidence to support the following findings:

(a) Lukacs knowingly prepared and recommended to the School Board a 2006–07 budget for adoption which contained inaccurate and overstated figures in categories including professional payroll accounts;

(b) Lukacs failed to adopt procedures to ensure timely payment of the Federal tax deposits and those deposits due on February 1, 2006 and June 30, 2006, were late resulting in penalties being assessed against the District;

(c) Teachers were assessed for sick leave days used and certain teachers were overpaid in the amount of approximately $11,000; and

(d) Employees in Lukacs' office, under his supervision, overpaid insurance premiums by approximately $118,000 for individuals who were no longer eligible for these benefits during a period of approximately July 2004 through May 2005. Lukacs failed to develop procedures to ensure that such overpayments were not made.

The School Board concluded that proper notice was given to Lukacs and a full hearing was held. The School Board concluded further that Section 1089 of the Public School Code of 1949, 24 P.S. § 10–1089, governs the removal of business administrators and was applicable to these hearings. The School Board noted that according to Section 1089, a school board can remove a business administrator, after due notice and hearing, for neglect of duty or other improper conduct. The School Board concluded that the contract that Lukacs maintained was in effect in 2006, specifically the Plum Borough School District Act 93 Administrators' Agreement (Act 93 Administrators' Agreement), primarily concerns compensation and does not specifically cover the subject of dismissal.

such effective date. The agreement may define the period of employment, salary, benefits, other related matters of employment and provisions of renewal and termination of the agreement.
(c) Unless otherwise specified in an employment agreement, the governing board shall, after due notice, giving the reasons therefor, and after hearing if demanded, have the right at any time to remove a business administrator for incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth or other improper conduct.

(d) A person serving as business administrator shall not be a member of the governing board of the school entity.
(e) A person serving as business administrator may serve as secretary or treasurer of the governing board.
(f) For purposes of this section, the term "school entity" shall mean a school district, intermediate unit or an area vocational-technical school. The term "governing board" shall mean the board of directors or joint board of such entity.

The School Board also concluded that each charge was sufficient alone or taken together for Lukacs' dismissal; as such, the School Board accepted the District's recommendation to terminate Lukacs from his employment for neglect of duty and other improper conduct, either of which was sufficient for removal. Finally, the School Board ratified Lukacs' suspension without pay.

On April 25, 2007, the School Board voted publicly to terminate Lukacs and approved its findings of fact and conclusions of law. Lukacs was notified by letter dated April 26, 2007 of his termination and he appealed to the trial court.[3] Lukacs also filed a "Motion for the Court to Hear and Consider Additional Evidence on Appeal under Local Agency Law". The trial court heard argument on the motion to hear additional evidence and the merits of Lukacs' appeal on August 21, 2007. Thereafter, the trial court, without taking any additional evidence, dismissed both the motion to hear additional evidence and Lukacs' appeal. This appeal followed.

Herein, Lukacs raises the following issues:

1. Whether the District violated Lukacs' contractual and due process rights.

2. Whether the School Board's findings of fact and conclusions of law that Lukacs knowingly withheld budget information from the School Board are supported by substantial evidence.

3. Whether the District and the trial court erred by concluding that Lukacs could be terminated based on mistakes made by others in the business office thereby holding Lukacs vicariously liable.

4. Whether the District and the trial court erred by refusing to hear or allow additional evidence which would have contradicted the factual basis for the charges.

5. Whether the District and the trial court erred and violated agency procedure and state law including the Pennsylvania Sunshine Act, 65 Pa.C.S. §§ 701–716, when suspending and then terminating Lukacs.

In support of the first issue raised herein, Lukacs argues that the District violated his contractual and due process rights. Lukacs contends that the succession of written agreements that the District used as a basis for compensating, evaluating, and rating Lukacs from April 2000 until his termination constituted employment contracts under which he was entitled to certain due process rights that conferred upon him a personal or property right in his employment. Lukacs points out that he was informed when he was hired that he would receive a contract fixing the terms and conditions of his employment and that he later received the Act 93 Administrators' Agreement for the period 1998–2001. See Reproduced Record (R.R.) at 40a; 486a–87a; 149a. Lukacs contends that this agreement contained a salary/compensation plan and a performance evaluation process for all administrators employed by the District.

Lukacs contends further that the Act 93 Administrators' Agreement for 2001–2004 is nearly identical to the 1998–2001 agreement and continues the rating and performance evaluation process for administrators. R.R. at 176a–186a. Lukacs points out that the 2001–2004 Act 93 Administrators' Agreement specifically lists the positions of superintendent, assistant

---

**3.** Lukacs brought his appeal against the District and the individual School Board members who are Dawn Caruso, Kevin Dowdell, Linda Eazor, Dan Lioy, Jeffrey Matthews, Tom McCough, Paul Olijar, Kris Traficanti, and Loretta White.

superintendent, and business manager as covered by the agreement while setting forth the salaries for these positions. *Id.* at 199a.

Lukacs argues that the trial court erred by holding that these agreements were not employment contracts but rather an administrative/supervisory evaluation program and therefore did not supersede Section 1089 of the Public School Code of 1949. Lukacs contends that the Act 93 Administrators' Agreement for 2004–2009 in effect when he was terminated specifically provides that after the first rating of "unsatisfactory", a directed plan shall be implemented and the administrator formally evaluated after one semester. R.R. at 131a. If the administrator then does not demonstrate performance at the level of "meets expectations", he or she will be evaluated a second time as "unsatisfactory" and a demotion or termination should be considered. *Id.* Lukacs argues that, despite being consistently evaluated in accordance with this agreement, this specific procedure was not followed prior to his termination. As such, Lukacs' due process rights were violated when he was first suspended and then terminated without going through the proper evaluation process. Lukacs contends that the District is well aware of this procedure as they followed it in 2002 when Lukacs' performance was rated unsatisfactory in 2002. Therefore, Lukacs argues, the District should have followed the termination procedure outlined in the Act 93 Administrators' Agreement not Section 1089 of the Public School Code.

In response, the District argues that Lukacs' termination is clearly governed by Section 1089 of the Public School Code. The District contends that there was no employment agreement between Lukacs and the District and Lukacs never signed an employment agreement. The District argues that just because his position is included in the Act 93 Administrators' Agreement of how evaluations and salary increases will be accomplished for all administrators does not automatically turn the same into an employment agreement as that term is used in Section 1089.

The District contends further that, pursuant to Section 1164 of the Public School Code, 24 P.S. § 11–1164, Lukacs, as the director of business affairs, was specifically precluded from being a part of the administrative compensation plan or Act 93 Administrators' Agreement.[4] Therefore, The

4. Section 1164 governs compensation plans for school administrators and provides as follows:

    (a) As used in this section, the following words will have the following meanings: "ADMINISTRATIVE COMPENSATION" shall mean administrator salaries and fringe benefits and shall include any board decision that directly affects administrator compensation such as administrative evaluation and early retirement programs. "SCHOOL ADMINISTRATOR" shall mean any employe of the school entity below the rank of district superintendent, executive director, director of vocational-technical school, assistant district superintendent or assistant executive director, but including the rank of first level supervisor, who by virtue of assigned duties is not in a bargaining unit of public employes as created under the act of July 23, 1970 (P.L. 563, No. 195), known as the "Public Employe Relations Act." However, this definition shall not apply to anyone who has the duties and responsibilities of the position of business manager or personnel director, but not to include principals.

"SCHOOL EMPLOYER" shall mean a board of school directors, the area vocational-technical school board of directors or the intermediate unit board of school directors as defined in this act.

    (b) The purpose of this section is to provide a means by which compensation matters affecting school administrators can be resolved within the framework of a management team philosophy.

District argues, neither having an individual contract nor being permitted by law to be a part of an administrative compensation plan, Lukacs' contention that the School Board violated a contractual right should end there. The District argues further that even if can be said there was an employment contract, Section 1089 still applied to the dismissal hearings and the District retained the power to terminate Lukacs' employment for any reasons outlined in that section. The District contends that there is absolutely nothing in the Act 93 Administrators' Agreement that addresses termination or otherwise waives the application of Section 1089; therefore, because it was not "otherwise specified in an employment agreement", the District could and did seek Lukacs' removal for reasons outlined in Section 1089. In addition, Lukacs was not charged with unsatisfactory performance rating and the section of the Act 93 Administrators' Agreement relied upon by Lukacs' concerns evaluations not grounds for termination.

■ Upon review, we conclude that the provisions of Section 1089 applied to the instant matter and not the provisions of the Act 93 Administrators' Agreement. As noted herein, Section 1089 provides in pertinent part as follows:

(a) A governing board of a school entity may employ or continue to employ a person serving in the function of business administrator of the school entity who shall perform such duties as the governing board may determine, including, but not limited to, the business responsibilities specified in section 433 of this act.

(b) The governing board may enter into a written employment agreement with a person hired after the effective date of this section to serve as a business administrator or into an amended or renewed agreement with a person serving in that function as of such effective date. The agreement may define the period of employment, salary, benefits, other related matters of employment and provisions of renewal and termination of the agreement.

(c) Unless otherwise specified in an employment agreement, the governing board shall, after due notice, giving the reasons therefor, and after hearing if demanded, have the right at any time to remove a business administrator for incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth or other improper conduct.

24 P.S. § 10–1089(a)—(c).

In *Knox v. Board of School Directors of Susquenita School District*, 585 Pa. 171, 888 A.2d 640 (2005), our Supreme Court

(c) School employers, upon the written request of a majority of the school administrators in the district, shall be required to meet and discuss in good faith with the school administrators on administrator compensation prior to adoption of the compensation plan.

(d) School employers shall be required to adopt written administrator compensation plans which shall apply to all eligible school administrators, as provided in this section, and which shall continue in effect until a time specified in the compensation plan, but in no event for less than one school year.

(e) An administrator compensation plan adopted pursuant to this section include, but not be limited to, the following items:
(1) A description of the program determining administrative salaries.
(2) Salary amounts or a salary schedule.
(3) A listing of fringe benefits.
(f) School employers and school administrators shall continue to be subject to the act of June 30, 1947 (P.L. 1183, No. 492), referred to as the Public Employe Anti–Strike Law.

addressed the applicability of Section 1089(c) to business administrators. Therein, our Supreme Court held as follows:

> We agree with appellant and amicus that the plain language of the statute encompasses all school business administrators, and not just those subject to written employment agreements. By its terms, subsection (c) neither limits its application to written employment relationships, nor purports to exclude those administrators working without the benefit of a written contract. Additionally, the introductory caveat ("Unless otherwise specified in an employment agreement") itself is not limited to written agreements, nor does that caveat advert to the "written employment agreement" addressed in subsection (b)'s recognition of the authority of the governing board to enter into such written agreements: instead, subsection (c), at least, is open-ended. *This construct suggests that the protections offered in the provision were intended to be applicable so long as there is not some other agreement between the parties addressing the subject of the statute.* ... Accordingly, we hold that the protections offered by Section [1089] apply equally to business administrators with or without written employment agreements, ...

*Knox,* 585 Pa. at 185–86, 888 A.2d at 649. (Emphasis added). Accordingly, we must determine whether the Act 93 Administrators' Agreement that Lukacs argues governs his removal as business manager constituted an employment agreement between Lukacs and the District and, if so, whether that agreement addresses the subject of Section 1089(c) of the Public School Code. We initially note that the District is correct that Section 1164 of the Public School Code, which governs compensation plans for school administrators, specifically excludes the position of business manager from the definition of

"school administrator". *See* Section 1164 of the Public School Code, 24 P.S. § 11–1164 ("[T]his definition shall not apply to anyone who has the duties and responsibilities of the position of business manager or personnel director, but not to include principals."). Accordingly, even if the Act 93 Administrators' Agreement could be deemed an employment contract between the District and Lukacs, such agreement is not authorized by the Public School Code and is therefore not an enforceable contract.

More importantly, the Act 93 Administrators' Agreement in effect at the time Lukacs was terminated does not address the subject or protections of Section 1089(c) of the Public School Code. *See* R.R. at 125a–135a. The Act 93 Administrators' Agreement only governs the compensation, evaluation and performance of administrators and the consequences of an unsatisfactory performance rating. *Id.* The Act 93 Administrators' Agreement clearly does not set forth the procedures or protections offered in Section 1089 when a business administrator is removed for the specific reasons set forth in Section 1089(c), which are incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth or other improper conduct.

Accordingly, as Lukacs was charged with and removed from his position as director of business affairs for neglect of duty and other improper conduct, the trial court in this case did not err by holding that the provisions of Section 1089 of the Public School Code were applicable herein and not the provisions of the Act 93 Administrators' Agreement.

■ Next, Lukacs argues that the School Board's findings of fact and conclusions of law are not supported by substantial evidence where the same do not cite to

specific testimony in the transcript while ignoring undisputed facts which contradict the findings. Lukacs contends that there is no evidence that he knowingly withheld budget information from the Board and intentionally overstated the teacher salary line item of the proposed 2006–07 budget. It was uncontradicted that when Lukacs was hired, he continued the budget practices and procedures of his predecessor with regard to the $450,000 contingency fund of which the District and the School Board were well aware. Lukacs contends that in support of this uncontradicted evidence, he wished to examine former Board president Jeff Matthews; however, he was prevented from doing so to his extreme prejudice.

Lukacs argues further that the School Board also erred by concluding that he should be terminated based on mistakes made by others in the District's business office, thereby holding him vicariously liable. Lukacs contends that it is undisputed that he did not personally make any of the mistakes on which the School Board relied in support of his termination. Lukacs contends that the mistakes were made over a period of time by an administrative assistant who was experiencing health problems and discovered later by Lukacs. Moreover, Lukacs argues, it was one mistake by the employee when she made the tax payment one day late.[5] Thus, that one mistake made by another employee does not constitute substantial evidence to terminate Lukacs for neglect of duty. Lukacs argues further that the District did not present any evidence as to the standard of care required by a business manager in order to prove that his conduct constituted neglect or negligence. Lukacs contends that the School Board also simply ignored the testimony of the School

Board's own expert that supported a conclusion that the business office was understaffed and that Lukacs was overworked.

Upon review of the record evidence in this matter, we conclude that the School Board's findings are supported by substantial evidence. With regard to the charges: (1) that the Federal tax deposits were untimely; (2) that teachers, who utilized sick leave bank days, were overpaid due to the failure of the business office to deduct the substitute teachers' wages from their pay; and (3) that health insurance premiums were overpaid, the School Board made the following findings of fact:

*Untimely Federal Tax Deposits*

23. As with all employers, the district is required to deposit employee Federal tax withholdings with the IRS on specific dates.

24. In lieu of making such payments by the specific dates, there is a penalty imposed against the District.

25. These tax deposits are made through an IRS electronic payment system.

26. The Federal tax deposit due on February 1, 2006, was not timely made.

27. The Federal tax deposit due on June 20, 2006, was not timely made.

28. The employee responsible for making the deposits was a person in the Business Office under the supervision of Lukacs.

29. Due to the late February 2006 payment, the District incurred a penalty in the amount of $5,707.07.

30. In addition, the District incurred a penalty for the June 2006 late payment.

31. The penalties were subsequently reduced.

---

5. We note that the record and the findings show that there were two Federal tax deposits that were untimely, not just one as argued by Lukacs.

32. Lukacs, as Director of Business Affairs, had no procedure in place to ensure that such time-sensitive payments were made.

33. Although Lukacs claimed his office was understaffed, he testified that he was aware such tax deposits could be missed and should be monitored.

### Sick Leave Bank Days

34. Pursuant to the applicable collective bargaining agreement with the District's professional employees, a teacher who exhausted his or her sick days could utilize sick days donated by other teachers to the sick leave bank.

35. In such case, for a teacher who withdraws a paid sick day from the sick leave bank, there is to be deducted from that teacher's pay, pursuant to the applicable collective bargaining agreement, the cost of the substitute teacher.

36. From May of 2004 through June of 2005, five teachers were overpaid the sum of $11,977.50 due to the failure of the Business Office to deduct the substitute teachers' wages from their pay.

37. The administrative assistant in charge of payroll, under the supervision of Lukacs, was to have performed that task.

38. Lukacs admitted he was not aware whether or not the assistant in question knew how to deduct the substitute wages, nor was there a procedure in effect to ensure that the proper procedure was followed.

### Health Insurance Premiums

39. The District is a member of a health consortium and pays health insurance premiums to it to fund employee health care.

40. Between July 2004 and October 2004, the District overpaid the consortium the sum of $118,196.08.

41. The overpayment resulted from the District paying for health insurance for employees who were not entitled to such coverage.

42. An employee under the supervision of Lukacs was responsible for ensuring that health insurance payments were correctly made to the consortium.

43. Lukacs admitted that it was his mistake.

44. As of the date of the hearing, the consortium refused to refund the District for the amount of the health insurance coverage overpayment.

A review of the record in this matter reveals that the foregoing findings are supported by Lukacs' own testimony. *See* R.R. at 254a–317a. The fact that the School Board does not cite to specific testimony to support these findings is of no moment as long as the record supports the same. Nor is it relevant that he did not personally make any of the mistakes on which the School Board relied in support of his termination. It is undisputed that Lukacs was the director of business affairs and that it was the responsibility of his office to make the timely Federal tax deposits, to correctly deduct from the wages of teachers utilizing the sick leave bank the cost of a substitute teacher, and to correctly make health insurance payments to the consortium. It is also undisputed that the mistakes made by the business office resulted in monetary loss to the District. Moreover, it was well within the province of the School Board to reject Lukacs' defense that his office was understaffed and overworked.

As correctly pointed out by the School Board, each of three foregoing charges was sufficient alone or taken together to support Lukacs' termination for neglect of duty. Therefore, we need not address whether the evidence supported the School

Board's finding that Lukacs knowingly prepared and recommended to the School Board a 2006–2007 budget for adoption which contained inaccurate and overstated figures in categories including professional payroll accounts. Nor do we need to address whether the School Board or the trial court erred by refusing to permit Lukacs to call School Board member Jeffrey Matthews as a witness with regard to the charge based on the 2006–2007 budget.[6]

Finally, Lukacs argues that the School Board's actions in first suspending him and then terminating his employment violated the Sunshine Act, 65 Pa.C.S. §§ 701—716. As this exact issue and Lukacs' arguments in support thereof are fully addressed in this Court's disposition of the related appeal involving these same parties docketed in this Court at 1846 C.D.

2007, we direct the parties to that decision filed simultaneously with the decision in this matter. Therein, we hold that the School Board did not violate the Sunshine Act.

Accordingly, the trial court's order is affirmed.

### *O R D E R*

AND NOW, this 16th day of July, 2008, the order of the Court of Common Pleas of Allegheny County, dated September 24, 2007, at SA 07–000541, in the above-captioned matter is affirmed.

---

**6.** Lukacs also argues that the School Board and the trial court erred by not permitting the submission of the District's counsel's notes regarding an investigative interview conducted by the assistant superintendent of George Cook, the District's superintendent. However, the original record reveals that counsel for Lukacs withdrew the request for the District's counsel's notes during oral argument on August 21, 2007, before the trial court on the motion for the court to hear and consider additional evidence. *See* Original Record, Transcript Dated August 21, 2007 at 29–30. Therefore, we also will not address the issue regarding the District's counsel's notes of Dr. Cook's interview.